IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

 v.                                CASE NO.:  2:24-CR-20070-DDC

NEWTON JONES, et al.,

          Defendant.

_____

### Non-Party International Brotherhood of Boilermaker Response to the United States' Motion for Abrogation of Attorney Client Privilege By Waiver

The International Boilermakers Union ("IBB" or "Union") is caught in the midst of a discovery dispute between the Government and the Defendants.  Neither emails nor devices were requested during the grand jury investigation that led to the Indictment alleging criminal wrongdoing going back to 2009.  Based on a demand[1] from the Defendants, the Government turns to the IBB for emails and devices but that requires privilege review and privilege review takes time.  To by-pass that requirement and thus expedite access, the Government claims the IBB has broadly waived privilege primarily based on documents and communications generated after the first grand jury subpoena in 2022.  It asks, and the Defendants generally do not oppose, that this Cout broadly define the scope of waiver.   The IBB opposes this demand.  First, even if there is a waiver, that does not give the parties

_____

[1] See generally Attachments to Defendant's Joint Response to The Government's Motion for Abrogation of Attorney-Client Privilege by Waiver, Doc. 118.  Styled as a Joint Response, it does not include defendant Kathy Stapp. Who has pled guilty.

automatic access – Rule 17(c) requires a request to be specific, relevant and admissible.   Second, to the extent waiver exists, it is limited to that which has been provided.  The Government's request circumvents the limitations of Rule 17(c), fails to offer a reasoned argument for its broad extrapolation of waiver and in any event, fails to achieve its real purpose of avoiding the delay associated with privilege review.

## I.    Preliminary Statement

On August 21, 2024, former officers and employees of the IBB were indicted in a 57-count Indictment, alleging a RICO conspiracy, theft from a labor organization, wire fraud conspiracy, theft from pension and welfare funds, health care fraud conspiracy and theft in connection with health care.  The Indictment came on the heels of another IBB-employee, who pled guilty in a separate case[2] to a RICO conspiracy.   Prior to the Department of Justice bringing those charges it had served three grand jury subpoenas on the IBB seeking documents in connection with its investigation.   Neither emails nor devices were requested, though they have been preserved.

As the parties work through their discovery process, the Defendants have made requests from the Government for items the Government did not have in its possession, including email accounts of various charged and un-charged individuals and access to computer devices.  In turn, the Government has reached out to the IBB.   The issue with such a broad production, is that most, if not all of those

---

[2] United States v. Tyler Brown, Case No. 24-CR-20047.

accounts will contain attorney-client communications and the process of creating a privilege log is extremely time-consuming (and expensive). Creation of a privilege log is only one step in the process. The second step is ascertaining whether items in the log are relevant, and if so, are they admissible. Those steps take even more time, and with a trial 10 months away, both the Government and the Defendants are anxious for access.

To expedite that process without compromising the IBBs assertion of privilege, the undersigned attempted to identify which attorney client communications were sought and why. To date the answer continues to be a general "all matters within the Indictment" and a *potential* assertion of advice-of-counsel. And that creates an issue for the IBB. First, it places the IBB – who is not a party to the litigation – in an untenable position of determining what matters in the Indictment are subject to an advice-of-counsel defense. Normally privileged communications would be inadmissible. Only if allegations are subject to an advice-of-counsel defense, can the admissibility prong even be considered. In other words, whether privilege attaches or whether it has been waived.

A subpoena seeking the email accounts for 9 custodians over a 14-year time span was served in conjunction with this motion. The Government by-passes the specificity requirement, glosses over relevance and moves prematurely to admissibility by asking for a judicial determination that the IBB has broadly waived privilege.

## II.    Background

A. **The Individuals Involved**

The IBB is an international union of more than 44,000 skilled workers serving numerous industries: heavy industry, shipbuilding, manufacturing, railroad, metalwork, heavy construction and cement.  It is governed by a Constitution.   Executive leadership includes an International President, and five International Vice-Presidents, which comprise the International Executive C (IEC). The International Secretary-Treasurer is also an officer, though not a member of the IEC.

The IBB utlizes attorneys, both general counsel and outside counsel. Relevant to the government's motion, the following attorneys or law firms represented or currently represent the IBB:

- **Blake & Uhlig**: a local law firm which represented the IBB as general counsel until severance of the relationship in approximately August 2023.  Michael Stapp[3], the husband of Defendant Kathy Stapp, served as General Counsel; numerous other attorneys at Blake & Uhlig represented the IBB over the course of the decades-long relationship.

- **Weinberg, Roger & Rosenfeld**: represented four International Vice Presidents in their official capacity in the civil action and then replaced Blake & Uhlig as General Counsel in approximately August 2023. It continues to serve as general counsel.

---

[3] Mr. Stapp is now deceased.

- **Boyd, Kenter, Thomas & Parrish**, LLC: a local law firm which represented four International Vice Presidents in their official capacity in the civil action.

- **David Elbaor**: represented the IBB in connection with the grand jury investigation beginning in April 2022 until he was replaced by Morgan Pilate LLC in 2023.

- **Morgan Pilate LLC**: the undersigned and current counsel.

- Other counsel: the IBB has employed dozens[4] of other attorneys or law firms in discrete matters.

### B. The grand jury investigation

In April 2022, the IBB received its first grand jury subpoena. Defendant Newton Jones was then-International President and attorneys with Blake & Uhlig served as general counsel. David Elbaor, a Washington, D.C. area attorney, was hired to respond. In approximately August 2023, then-International President Warren Fairley replaced Mr. Elbaor with the undersigned and replaced Blake & Uhlig with attorneys from Weinberg, Roger & Rosenfeld.

Between April 2022 and the Indictment in August 2024, the IBB responded to three grand jury subpoenas and made approximately 20 productions. Email and entire devices were not part of the grand jury demand.

### C. Internal Disciplinary Actions

---

[4] Counsel has identified dozens of attorneys or law firms who may have provided legal services to the IBB based on classification of payments to various entities during 2009-2023.

In February 2023, prior to the Boilermakers Construction Sector Operation's conference, then-International President Newton Jones called a meeting attended by Kateryna Jones (his wife), International Vice Presidents Tom Baca, Arnie Stadnick, John Fultz, and Lawrence McManamon, International Secretary-Treasurer William Creeden, Administrative Assistant to the International Secretary-Treasurer and Director of Human Resources Kathy Stapp, Tim Simmons and attorneys David Elbaor, Jason McClitis, and Michael Stapp.   During that meeting, Newton Jones disclosed a Department of Justice investigation alleging financial misconduct on the part of Mr. Jones and Mr. Creeden.  That disclosure formed, in part, the Article 17 charges against Newton Jones filed by International Vice President John Fultz alleging that Newton had paid Kateryna Jones significant sums of money for work never performed during periods when she could not be legally paid; he spent thousands of dollars of the IBBs funds on flights to the Ukraine where the IBB has no members and conducts no business; and used IBB funds to pay for extravagant and unnecessary personal meals for himself and his wife near their home in North Carolina[5].  Article 17 refers to the Article under the IBB Constitution which gives rise to disciplinary action of a member.

The internal filing of Article 17 charges triggered a response by the accused – Newton Jones – to appoint an "Article 17 Committee" to judge the allegations. Jones appointed International Secretary-Treasurer (IST) William Creeden and IVP

---

[5] Fultz Article 17 Letter dated April 14, 2023; see Doc. 028-3, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

Lawrence McManamon to the Committee[6]. Other IVPs didn't like the sound of this. The IBB Constitution prohibits Executive Council members (including the President) from participating in a proceeding if that member's direct involvement in the proceedings makes it so the member cannot be impartial. The IVPs considered Jones's appointment of the members to the Article 17 Committee as a violation of that provision. The IVPs held a meeting and appointed another union member (Robert Lunsford) to exercise the President's authority in overseeing the Article 17 charges against Jones[7]. Lunsford scheduled the hearing date for two weeks later (May 30), and appointed another official (Joseph Maloney) as the hearing officer.[8]

At the same time as these events were unfolding, Jones's Article 17 Committee—composed of Creeden and McManamon—sent various correspondence indicating it was investigating the charges against Jones and that the May 30 hearing violated the IBB's constitution. The May 30 hearing took place anyway.   Fultz presented evidence including the September 2022 Blake & Uhlig Memorandum; correspondence in August 2013 relating to the payment for 2013 alleged employment; correspondence in April 2015 relating to the payment for 2014 alleged employment; credit card payments/receipts in 2017-2019; a breakdown of meals; and a breakdown of flights[9].   Jones did not appear at the May 30 hearing, but sent two "observers." On the same date as the hearing and in a

---

[6] Complaint and Exhibit 4, Doc. 001-5, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250
[7] Complaint and Exhibit 7, Doc. 001-8, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250
[8] Complaint and Exhibit 8, Doc. 001-9, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250
[9] Transcript of Hearing and accompanying exhibits; see Doc. 028-5, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

preemptive move, Jones caused a Complaint to be filed on behalf of the IBB, challenging the process by which the Article 17 was conducted and seeking declaratory and injunctive relief[10].

On June 2, 2023, the IEC found Newton Jones misused IBB funds, removed him as International President, directed reimbursement of all funds in connection with the Article 17 charges and stripped him of his membership in the IBB.[11] Nowithstanding the IEC decision, Jones refused to step down as President. And, he took retaliatory action against each of the IVPs who took part in his removal.

During the pendency of the civil action, Jones retired[12]. Ultimately, Warren Fairley assumed the role of International President in August 2023. Creeden also retired and was replaced by Kathy Stapp. Larry McManamom, who abstained from participation in the Article 17 proceedings, retired too.

### D. <u>The Civil Action</u>

At the core of the civil dispute was control of the IBB yet the highly contested civil action was short-lived. By August 18, 2023 opinion, the Court concluded that the IEC vote to remove Jones from office was valid. And any actions Jones took after his June 2 removal from office were unlawful and violated the IBB's Constitution[13].

---

[10] Complaint, Doc. 001, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250
[11] Decision of Executive Council dated June 2, 2025; see Doc. 028-6, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250
[12] Jones Letter re Retirement. Doc. 85-1, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

[13] Memorandum and Order, Doc. 104, at 19, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

Relevant to the consideration of the instant motion, during that two-month window, the IVPs who had either filed the Article 17 charges or considered them, opposed the temporary restraining order and injunctive relief and filed a Counterclaim against the IBB, Newton Jones, Kateryna Jones and William Creeden[14]. Then-International Vice President Simmons submitted a Declaration setting forth the actions that led to the removal of Newton Jones, including the transcript and evidence presented as to the Article 17 hearing[15]. Included in the evidence was the September 2022 Blake & Uhlig Memo. The next day, the IBB – still acting at the behest of Jones' – filed a motion to partially seal a portion of that evidence: the September 2022 Memo[16]. In response and on the very same day, the IEC met to discuss the issue of the memorandum and the IBB's attorney-client privilege. Agreeing to waive the IBB's privilege with respect to the document, if it had not already done so, the action was memorialized in a Declaration from attendee Warren Fairley[17]. Despite this, the Court granted the Motion.

Subsequently, the Memorandum was produced to the Government at their request.

E. **The Indictment**

---

[14] Counterclaim by Baca, Stadnick and Simmons, Doc. 31 and Third Party Complaint by John Fult, Doc. 35, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

[15] Declaration of Tim Simmons, Doc. 028, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

[16] Plaintiff Motion to Partially Seal, Doc. 034, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

[17] Declaration of Warren Fairley, Doc. 036-1, *IBB v. Baca*, D.Kan. Case No. 23-CV-2250

The Indictment includes the conduct underlying the Article 17 charges but extends well beyond the Article 17 allegations in terms of time (January 2009-August 2024), persons involved (adding six other persons besides Newton Jones) and conduct (union and pension fund embezzlement, wire fraud, manner of electing officials and failure to perform duties).

### F. Documents at Issue and the IBB's position

#### 1. September 2022 Memorandum and the IBBs Position as this Document

The September 2022 Memorandum, a memo designated "Attorney-Client Privileged and Confidential" was issued from Blake & Uhlig attorneys to Tim Simmons and Kathy Stapp. Attachment A. At the time, Tim Simmons was the AAIP/ED-CSO[18]. The memo received by Tim Simmons and Kathy Stapp was a version of an earlier-prepared-but-not-sent memo intended for President Jones[19]. According to the memo, "The purpose of the original memorandum was mooted by intervening factors." Id. Among other things, the memorandum contained a discussion of the law applicable to the determination of the reasonableness of union payments to officers and employees, including salaries, benefits and expenses. The memo concluded, in part, "We believe the most important thing to take away from this memorandum is that it is in the best interest of the IBB for the International President to recommend and IEC to adopt a clear, concise and comprehensive "Expense Policy." At the very least, we recommend the IEC adopt interpretations

---

[18] AAIP refers to Administrative Assistant to the International President and ED-CSO refers to Executive Director of the Construction Sector.
[19] See Attachment A, September 20, 2022 Memorandum

and corresponding rules regarding expense reimbursement issues that are not clearly spelled out in the Constitution."[20]

The IBB agrees that privilege is waived as to this communication but challenges the scope of the waiver to anything beyond its four corners.

### 2. Minutes

To the extent minutes have not been produced or have been "clawed back", the IBB agrees that no privilege attaches to the minutes. The IBB challenges the scope of any waiver beyond the minutes themselves and asks the Court to review the minutes *in camera*, if the Court is inclined to consider the relief requested in the Government's motion.

### 3. David Elbaor invoices

The IBB asserts attorney-client and/or work product privilege over the Elbaor invoices.

### 4. Documents related to the engagement of a surveillance firm

The IBB asserts no privilege as to the engage of the surveillance firm but asserts that scope of any waiver is limited to those documents already produced.

### 5. Communications identified in Privilege Log, Production 15

These communications involve the undersigned counsel and are not relevant to any allegation. The IBB asserts privilege as to these communications.

### III.   Argument Opposing the Broad Scope of the Government's Request

---

[20] Id, pg 15.

From the above-listed documents, the Government's Motion asks the Court to enter a broad Order defining the waiver of the IBB's attorney-client privilege as follows:

> 1)  Any communications between Boilermakers Union officers or employees and any of its attorneys concerning the standards for expenditure of union funds under the Boilermakers Union Constitution, by-laws, and policies, and federal law; and
>
> 2)  Any communications between Boilermakers Union officers or employees and any of its attorneys concerning the subject of any of the Indictment allegations, regardless of when the communications were made[21].

In conjunction with this motion, the Government served the IBB with a Rule 17(c) subpoena[22] for the entire contents of the defendant's email accounts, as well as the email accounts of two former IBB employees.

## A.  The Government's Request Fails to Recognize That Neither It Nor the Defendant's Are Entitled to Conduct General Discovery

General discovery is not permitted in criminal cases.  *United States v. Wittig*, 250 F.R.D. 548, 551 (D.Kan. 2008).  A party's ability to access information in the possession of a third party is limited to the voluntary production by the third party or in the alternative, through the use of a Fed.R.Cr.P. Rule 17(c) subpoena to obtain materials to be used in trial.  Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  A "subpoena duces tecum is not a discovery

---

[21] Doc. 107, at 23.
[22] Subpoena, Doc. 111-1, Exhibit A

device, and the category of materials subject to a subpoena is not so expansive as for

materials subject to Rule 16." 25 James W. Moore & Robert. M. Cipes, Moore's

Federal Practice §617.08[2] (Daniel R. Coquillette et al. eds.)(3d ed. 2024).

Specificity, relevance and admissibility is the standard for a party seeking a

Rule 17(c) subpoena. The burden is on the party seeking the subpoena duces tecum

to establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not
> otherwise procurable reasonably in advance of trial by exercise of due
> diligence; (3) that the party cannot properly prepare for trial without such
> production and inspection in advance of trial and that the failure to obtain
> such inspection may tend unreasonably to delay the trial; and (4) that the
> application is made in good faith and is not intended as a general "fishing
> expedition."

465 F.3d at 467 (internal citations abbreviated) (citing *United States v. Nixon*, 418

U.S. 683, 699–700 (1974)); United States v. Abdush-Shakur, 465 F.3d 458, 467 (10th

Cir. 2006).

Here, the Government by-passes specificity and relevance, and focuses on waiver

in an effort to avoid the attorney-client privilege review that might ordinarily occur,

whether it be in email accounts or, in materials that exist on electronic devices

currently in the possession of the IBB.   Neither the Government nor the

Defendants, despite being given an opportunity to respond, assert any relevance to

attorney client communication.  For its part, the Government asserts that Court

determination of the scope of waiver serves the following purposes: 1) it allows the

parties to review any communications which may be admissible; 2) it may influence

a defendant's decision to plead or go to trial or the Government's decision to dismiss

charges; and 3) to avoids the delay which will necessarily occur if privilege review is required[23]. This puts the cart before the horse. Relevance must be identified before determining admissibility and relevance can only be determined through specifically identified material. Defendants, for their part, assert that they are "entitled to adduce evidence about the advice given by the IBB's counsel about the subject matters in the Indictment."[24]  Yet no defendant asserts that they were given advice by any IBB attorney related to the subject matter of the Indictment, let alone made an assertion that advice is relevant to their defense.

For example, relevance *might* be shown if a defendant is relying on advice-of-counsel defense. To establish an advice-of-counsel defense requires the defendant to establish "(1) a request for advice of counsel on the legality of a proposed action; (2) full disclosure of the relevant facts to counsel; (3) receipt of advice from counsel that the action to be taken will be legal; and (4) reliance in good faith on counsel's advice." *United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005)(internal citation omitted); accord *United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Circuit 1997) (failure to given an advice-of-counsel instruction is reversible error, even if evidence is weak, insufficient, inconsistent or of doubtful credibility). Beyond failure to assert the defense, no defendant alleges that they followed the advice of counsel and relied on that advice before taking any of the actions of which they are now accused.

---

[23] Doc. 107, at 22.
[24] Doc. 118, at 6.

### B. Failure to Identify Specificity or Relevance Is An Impermissible Attempt to Shift the Burden to the IBB to Establish Limitations on The Scope of Any Waiver

By arguing for broad waiver, the Government asks this Court to make a scope determination without knowing whether attorney client communications (or work privilege for that matter) have any bearing on the allegations in the Indictment, thereby circumventing the relevance and specificity requirements of Rule 17(c). None of the cases it cites arise in a Rule 17(c) context, rather they arise when the holder of the privilege is a litigant. Take *Hunt v. Blackburn*, a civil dispute in which the client of an attorney waived privilege by describing things her attorney said and did in connection with a land transaction. Not surprisingly, the Supreme Court said the attorney was permitted to give his accounting of events. 128 U.S. 464, 470-471 (1988). Or consider *Pinson*, an ineffective assistance of counsel case, in which the Court concluded that "[w]hen a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications." *United States v. Pinson*, 584 F.3d 972, 977 (10th Cir. 2009). In both instances, the advice of the attorney was at issue.

In the context of a grand jury subpoena, privileged information was revealed during a phone call. XYZ did not contest the waiver but challenged whether the waiver had a "ripple effect, i.e., whether it reached anything beyond that which was actually disclosed." The Court concluded it did not. *In re Keeper of Records (Grand*

*Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 24 (1ˢᵗ Cir. 2003) (holding that

"extrajudicial disclosure of attorney-client communications, not thereafter used by

the client to gain adversarial advantage in judicial proceedings, cannot work an

implied waiver of all confidential communications on the same subject matter.")

Even the government recognizes, "same subject matter" is reliant upon the specific

facts of each case.  See *In re Grand Jury Proceedings*, 219 F.3d 175, 185 (2d Cir.

2000)("Since fairness depends on context, we believe it is not prudent to formulate a

per se rule in this area of the law.") (citing *Upjohn Co. v. United States*, 449 U.S.

383, 396 (1981) (opting for a case-by-case approach)).

    Unlike any of those contexts, the IBB is not a party to this case – it is the

custodian of records and no party has asserted that waivers of privilege have any

bearing on the allegations themselves.  Even when premised on fairness concerns, it

is only the defendants who can raise fairness – and only if they relied on advice

regarding the same subject matter.  Yet no defendant makes that claim.  As to the

September 2022 memo, it is addressed to a defendant who has pled guilty (and who

has filed no response to the government's Motion for Abrogation) and Tim Simmons,

who was not an officer at the time of receipt.  It laid out Blake & Uhlig's

interpretation of the law related to the reasonableness of payments including

salaries, benefits, and expenses.  It was offered prospectively, not based on any

analysis or consideration of specific facts.  It was but one exhibit in determining the

Article 17 charges against Newton Jones.  The IBB has not waived privilege beyond

this document.  The Government's assertion that Fairley's Declaration regarding

waiver is contradicted by the pleading which accompanied the Declaration and the very timing of the Declaration itself. Only when the IBB – at Newton Jones behest – demanded that memo be sealed, though it was already filed on the public docket, did the IEC quickly assemble, waive privilege to the extent it hadn't already been waived, provided the Court with a declaration containing the IECs position in an effort to keep the Memo unsealed. Nothing suggests the waiver goes any further.

As to the forensic surveillance report regarding Newton Jones and Bill Creeden's use of a company to identify the person responsible for the Article 17 charges, the IBB produced those emails in relation to a specific request from the Grand Jury for those items. The Government asserts that withholding of other memoranda and minutes during then President Fairley's tenure, including those authored by the same attorney requires this Court's conclusion that the IBB has broadly waived privilege. The IBB is at a loss to understand how the Government reaches this conclusion. Should the Court think it necessary to address this, the IBB is willing to produce the emails in camera to the Court for its review. Absent a specific demand with a showing of relevance, the Court need not address the privilege issue because the Government has failed to comply with two of the three prongs under Rule 17(c).

### All other documents

The same is true with the remaining documents. Absent a specific demand with a showing of relevance, the Court need not address the privilege issue because the Government has failed to comply with two of the three prongs under Rule 17(c).

### C. The Government's Basis for Waiver Doesn't Solve the Problem of Review for Privilege

Somehow from the limited communications: the September 2022 Memo, the forensic surveillance report and accompanying emails in 2023, the David Elbaor invoices and a handful of minutes, the Government extrapolates the broadest of waivers as to any communication between Boilermakers Union officers or employees (there are approximately 100) or any of its attorneys (there are dozens) over the Indictment allegations (there are 57 counts) over an unlimited time period. Absent a specific request accompanied with a showing of relevance, the Court should not address the admissibility issue by determining the scope of any waiver according to the broad demand made by the Government.

The IBB repeatedly requested that the Government, acting as a conduit for the Defendants, identify the allegations to which the Defendants were asserting privilege. When the Government was either unwilling or unable to do so, the same request was made of Defendant's counsel. The real issue is that both the Government and the IBB want vast amounts of information (email accounts spanning 14-years, and the ability to have access to all data contained on various devices). While the IBB continues to be agreeable to produce the email accounts, that willingness to do so is not without limitation. If the Government and Defendants want the entirety, they should be willing to exclude any attorney communication. If either can identify the relevance of communications with specificity, admissibility, ie privilege should be addressed. Rule 17(c) is not a

18

discovery tool, it is a production-in-anticipation-of-trial tool. It is hard to fathom that the tens of thousands of attorney communications all have bearing on the allegations in the Indictment. Thus, even if the Court were to adopt the Government's request, the IBB would still be required to do a privilege review to exclude those that don't fall into the scope of the Government's request.

## IV.    Conclusion

Privilege no longer attaches to September 2022 Memo, the forensic surveillance report and accompanying emails, and the IEC minutes. The IEC maintains its privilege as to the David Elbaor invoices, and items listed on the Production 15 log, which include communications involving the undersigned. The Government's request for the broadest of waivers must fail absent a specific request which identifies the relevance of the requested information. To avoid further delay, the Government should agree to only emails not involving attorney communications. That would avoid the need for privilege review and put the other communications in the hands of the parties. The Government's request for a broad waiver should be denied.

Respectfully submitted,
MORGAN PILATE LLC

*/s/ Melanie S. Morgan*
Melanie S. Morgan**, #**16088
926 Cherry Street
Kansas City, Missouri 64106

19

816-471-6694 (Tel)
816-472-3516 (Fax)
Email: mmorgan@morganpilate.com
Attorney for the International
Brotherhood of Boilermakers Union

## CERTIFICATE OF SERVICE

I, Melanie Morgan, hereby certify that on the 6th day of July, I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system which will

send a notice of electronic filing and a copy of the filing to all counsel of record.

*/s/Melanie S. Morgan*

Melanie S. Morgan

20