UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      v.<br><br>NEWTON JONES,<br>WILLIAM CREEDEN,<br>KATERYNA (KATE) JONES,<br>WARREN FAIRLEY,<br>LAWRENCE McMANAMON and,<br>CULLEN JONES<br><br>                    Defendants. | Case No.: 2:24-CR-20070-DDC |

**GOVERNMENT'S MOTION FOR ADMISSION OF COCONSPIRATOR STATEMENTS PURSUANT TO RULE 801(d)(2)(E) AND REQUEST FOR A *JAMES*[1] HEARING**

The United States submits the following motion for admission of coconspirator statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. The government requests a pre-trial ruling finding that the coconspirator statements are admissible at trial. The government requests a pre-trial *James* hearing, in which it will provide summary testimony to establish by a preponderance of the evidence that: (1) the charged conspiracy existed; (2) each defendant was a member of the conspiracy; and (3) certain statements of coconspirators were made during the course of and in furtherance of the conspiracy. In the alternative, the government requests that the court provisionally admit the coconspirator statements without the need for a *James* pre-trial hearing.

**I.      LEGAL STANDARD**

---

[1] Hearings recognized under United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917, 61 L. Ed. 2d 283, 99 S. Ct. 2836 (1979), became commonly referred to as "*James* hearings."

1

Statements of a coconspirator in illegal activity have unique evidentiary value, rarely capable of duplication in live testimony at trial. *United States v. Inadi*, 475 U.S. 387, 395-96 (1986). Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that an out of court "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Regardless of a statement's independent reliability or the declarant's availability, coconspirator statements are not hearsay and are admissible if the United States establishes, by a preponderance of evidence, that: (1) a conspiracy existed; (2) the defendants and the declarants were members of that particular conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995); *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990).

The district court may satisfy the prerequisite for admission of coconspirator statements by holding a *James* hearing *or* by provisionally admitting the statements with the caveat that the government prove the existence of the conspiracy through trial testimony or other evidence. *Owens*, 70 F.3d at 1123. Although the Tenth Circuit has expressed a preference for first determining the existence of the conspiracy at a pretrial hearing, that preference has not become mandatory. *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998). Even when the government intends to introduce coconspirators' statements, such a determination is not required to be made pretrial. *See United States v. Pinto*, 838 F.2d 426 (10th Cir. 1988) (appellate court upheld conditional admission of statements, subject to government's connecting up later). The court may make a factual finding on the record regarding the admissibility of coconspirator statements at trial rather than hold a pretrial hearing. *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993) (*en banc*).

The trial court retains some discretion in choosing between these alternatives. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). The provisional admission of co-conspirators' statements is much more expeditious and efficient than a pretrial hearing. *See United States v. Hernandez*, 829 F.2d 988, 994 (10th Cir. 1987); *United States v. Dahda*, No.12-20083, 2014 WL 1239517 at *2 (D. Kan. Mar. 26, 2014) (overruled Defendant's motion for *James* hearing because it would "essentially duplicate the voluminous evidence at trial," wasting judicial resources with "little resulting gain"); *United States v. Craig*, 2013 WL 6062171 at *1 (D. Kan. Nov. 15, 2013) (overruling Defendant's motion for *James* hearing based on the substantial discovery and likelihood for *James* hearing to duplicate the evidence at trial); *United States v. Perez-Alcala*, 2013 WL 3516876 at *2 (D. Kan. Jul. 11, 2013) (overruling Defendant's motion for a *James* hearing based on the same reasoning).

The Court may consider the hearsay statements sought to be admitted, as well as independent evidence when making the requisite findings. *Bourjaily* 483 U.S. at 179 (1987); *Johnson*, 911 F.2d at 1403. The court has the discretion to consider any hearsay evidence not subject to privilege, regardless of whether that evidence would be admissible at trial. *Owens*, 70 F.3d at 1124. The government may, in the court's discretion, call only the case agent to testify to the existence of the conspiracy pursuant to Federal Rule of Evidence 104(a). *Id*. Further, there is no requirement that the witness to the hearsay statements be a member of the conspiracy. *United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995).

### A. Principles for Determining the Existence of and Membership in the Criminal Conspiracy

Although the conspiracy must be proved by a preponderance of the evidence in order for the coconspirator hearsay exception to be available, it need not be proved by direct evidence. "The nature of the offense of conspiracy with its attendant aspects of secrecy, often requires that

elements of the crime be established by circumstantial evidence." *United States v. Andrews*, 585 F.2d 961, 964 (10th Cir. 1978); *see also United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986) (citations omitted) (existence of a conspiracy may be inferred from circumstantial evidence).

Independent evidence of the conspiracy is required. *See Bourjaily*, 483 U.S. at 177. The Tenth Circuit has held *Bourjaily* requires that at most, there "be some independent evidence linking the defendant to the conspiracy." *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987). Independent evidence need not be substantial to be found sufficient. *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993). A coconspirator's direct observations and contact with a defendant qualify as independent evidence of a conspiracy. *Hernandez*, 829 F.2d at 995. Summary testimony by a case agent regarding factual statements by a coconspirator to the agent during an investigation may be considered as independent evidence of a conspiracy. *Owens*, 70 F.3d at 1125. The trial court's requisite findings allowing admission of coconspirator statements are reviewed under the clearly erroneous standard. *United States v. Peveto*, 881 F.2d 844, 852 (10th Cir. 1989).

### B.  Requirements for Membership in a Conspiracy

The United States need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. As the Supreme Court has said:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense . . . The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other . . . If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

*Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (citations omitted).

A defendant may be found to have participated in a conspiracy even if he joined or terminated his relationship with others at a different time than another defendant or coconspirator. *Andrews*, 585 F.2d at 964. "[S]tatements made during the course of and in furtherance of a conspiracy, even in its embryonic stages, are admissible against those who arrive late to join a going concern." *United States v. Potts*, 840 F.2d 368, 372 (7th Cir. 1987) (citations omitted).

A district court may consider the conduct, knowledge, and statements of the defendant and others in establishing participation in a conspiracy. *United States v. Gutierrez*, 576 F.2d 269, 273-74 (10th Cir. 1978) (defendant's presence during part of conversation concerning transaction that was part of conspiracy coupled with completion of the transaction unquestionably identified the defendant as a member of the conspiracy for purposes of admission of coconspirator statements).

Finally, once a conspiracy is established, "there need only be some independent evidence linking the defendant to the conspiracy." *Martinez*, 825 F.2d at 1453. The law is clear that a defendant need not know all the details or all the members of a conspiracy. *United States v. Caro*, 965 F.2d 1548, 1556 (10th Cir. 1992). Further, a defendant's participation in the conspiracy may be slight and may be inferred from the defendant's actions so long as the evidence establishes a connection to the conspiracy. *Id.*; *see United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir. 1988).

### C. Statements Made During the Course of and in Furtherance of the Conspiracy

Once the existence of the conspiracy and membership in that conspiracy of both the defendant and the declarant is established by a preponderance of the evidence, statements made "during the course" and "in furtherance" of the conspiracy are admissible pursuant to Rule

801(d)(2)(E).  As long as the declarant and the person against whom the statement is offered were members of the conspiracy when the statement was made, the statement need not have been made to a person who was ever a member of the conspiracy.  *United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995).

Statements are "in furtherance" of the conspiracy and therefore admissible under the coconspirator exception if they are intended to promote the conspiratorial objectives.  *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (citing *Reyes*); *United States v. Sinclair*, 109 F.3d 1527, 1534 (10th Cir. 1997); *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993).  The statements do not have to actually further the conspiracy.  It is enough that the statements are intended to promote the conspiratorial objectives.  *Reyes*, 798 F.2d at 384.  When determining "whether a statement was made in furtherance of a conspiracy, the focus is on the declarant's intent in making the statement."  *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993) (citations omitted).  Whether a particular statement tends to advance the objectives of the conspiracy is determined by examination of the context in which it is made.  *Perez*, 989 F.2d at 1579.

Some widely recognized categories of statements that have been held to be statements "in furtherance" of a conspiracy include statements: (1) to execute or transact the business of the conspiracy; (2) regarding the activities of the conspiracy; (3) to recruit potential coconspirators; (4) to reassure members of a conspiracy's continued existence; (5) identifying other members of a conspiracy and their roles; and (6) to conceal the activities of the conspiracy.

### 1. Statements Made to Execute or Transact the Business of the Conspiracy

Statements made by coconspirators to conduct the business of the conspiracy and to accomplish its goals are "classic examples of statements made to conduct and further" a

6

conspiracy. *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991). Statements in this category found to be "in furtherance" include: statements of future intent that set transactions to the conspiracy in motion and maintain the information flow among coconspirators, *Roberts*, 14 F.3d at 515; statements that prompt the listener to act in a manner that facilitates the carrying out of the conspiracy, *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987); statements made to prompt further action on the part of conspirators, *Perez*, 989 F.2d at 1578 (citations omitted); and statements made to facilitate meetings, *United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992).

### 2. Statements Regarding the Conspiracy's Activities

Statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the in-furtherance requirement. *Perez*, 989 F.2d at 1578; *Roberts*, 14 F.3d at 515 (citing *United States v. Yarbrough*, 852 F.2d 1522, 1535-36 (9th Cir 1988)). Statements explaining events important to the conspiracy to one of its members in order to facilitate the conspiracy are in furtherance of the conspiracy. *Reyes*, 798 F.2d at 384; *Townley*, 472 F.3d at 1273. Statements regarding a coconspirator's failure to fully accomplish the objective of the conspiracy are admissible as updates on the status of the conspiracy and how that status affects the future of the conspiracy. *United States v. Doyle*, 771 F.2d 250, 256 (7th Cir. 1985).

### 3. Statements to Recruit Potential Coconspirators

Statements made to recruit potential members of the conspiracy are made "in furtherance" of the conspiracy. *Perez*, 989 F.2d at 1578; *United States v. Johnson*, 4 F.3d 904, 914 (10th Cir. 1993).

### 4. Statements to Reassure Members of a Conspiracy's Continued Existence

"Statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." *United States v. Gomez*, 810 F.2d 947, 953 (10th Cir. 1987) (citation omitted); *Perez*, 989 F.2d at 1578.

### 5. Statements Identifying Other Members of a Conspiracy and Their Roles

Statements made by a coconspirator that identify a fellow conspirator are made in furtherance of the conspiracy. *Townley*, 472 F.3d at 1273; *Williamson*, 53 F.3d at 1520; *Smith*, 833 F.2d at 219.

### 6. Statements to Conceal the Criminal Activities of the Conspiracy

Statements made to conceal the criminal objectives of the conspiracy are made "in furtherance" of the conspiracy where ongoing concealment is one of its purposes. *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988).

## II. EXISTENCE OF THE CHARGED RICO CONSPIRACY AND ITS MEMBERS.

### A. Defendants were members of the Jones Enterprise

The charges in this case arise out of defendants' participation in a criminal enterprise "Jones Enterprise" to enrich the members of the conspiracy, embezzle union funds, commit wire fraud, and embezzle from pension and welfare funds. From at least January 2009 and continuing to on or about August 2024, the defendants, acting in various capacities, engaged in a conspiracy to conduct the affairs of the Jones Enterprise through a pattern of racketeering activity. The pattern of racketeering activity through which defendants agreed to conduct affairs of the enterprise consisted of multiple acts under Title 29, United States Code, Section 501(c) (relating to embezzlement from union funds), Title 18, United States Code, Section 1962(d); Title 18,

United States Code, Section 664 (relating to embezzlement from pension and welfare funds); Title 18, United States Code, Sections 1347 and 1349, (relating to health care fraud); and Title 18, United States Code, Sections 1343 and 1349 (relating to the embezzlement of Bank of Labor funds). It was part of the conspiracy that each defendant agreed that a coconspirator would commit at least two acts of racketeering in the conduct of the Jones Enterprise. The "manner and means of the racketeering conspiracy are fully described in the indictment and will not be recounted here. (*See* Indictment, Doc. 1 at ⁋'s 17-46.)

### B.  Relevant coconspirators[2]

- **Newton Jones** – was appointed International President of the Boilermakers Union in 2003 and was reelected as International President at the 2006, 2011, 2016, and 2021 conventions of the Boilermakers Union. On June 2, 2023, Jones was removed as International President and expelled as a member of the Boilermakers Union following a finding pursuant to Article 17 of the Boilermakers Constitution that he was guilty of financial misconduct. Additionally, Newton Jones served as Chairman of the Board of Directors of the Bank of Labor and held the title Chief Executive Officer, a salaried employment position.

- **William Creeden** – was appointed International Secretary-Treasurer of the Boilermakers Union in 2005 and was reelected as International Secretary-Treasurer at the 2006, 2011, 2016, and 2021 conventions of the Boilermakers Union. In August 2023, Creeden resigned as an officer and employee of the Boilermakers Union. Additionally, Creeden served as a member of the board of directors of the Bank of Labor and held the title of Senior Executive Vice-President of the Bank of Labor, a salaried employment position.

---

[2] This list is not meant to be exhaustive, as the government anticipates the potential for additional coconspirators to be identified during preparation for trial or at trial. The government respectfully requests the opportunity to identify additional coconspirators if new information comes to light.

9

- **Kateryna (Kate) Jones** – is married to Newton Jones. She held employment positions with the Boilermakers Union, including Special Assistant to the International President.

- **Warren Fairley** – served as International Vice-President in the Boilermakers Union from at least 2013 until January 2023, and as International President of the Boilermakers Union from August 2023 to August 2024.

- **Kathy Stapp** – served as Director of Human Resources and/or Special Assistant to the International Secretary Treasurer from at least 2013 until August 2023, and as International Secretary-Treasurer from August 2023 to August 2024.

- **Cullen Jones** – is the son of Newton Jones and held employment positions with the Boilermakers Union periodically from 2009 through August 2023.

- **Coconspirator One** – served as Executive Director of Industrial Sector Operations ("ISO") of the Boilermakers Union from at least 2015 through 2018. From 2016 to 2018, Coconspirator One also served as Special Assistant to the International President of the Boilermakers Union, Defendant Newton Jones. From 2018 to November 1, 2022, Coconspirator One also served as Chief of Staff of the Boilermakers Union. From 2018 to 2022, Coconspirator One held all three positions simultaneously and reported directly to Defendant Newton Jones.

### III. POTENTIAL COCONSPIRATOR STATEMENTS ADMISSABLE UNDER RULE 801(D)(2)(E)

A. Categories of statements anticipated from witness testimony

The government anticipates testimony in this case will come from current and former employees of IBB and defendants who were members of the Jones Enterprise. Below is a non-

exhaustive list of statements the government anticipates could come up during trial.[3] The government respectfully submits the Court can, after the *James* hearing, rule that any statement by a coconspirator will be admissible.

The following statements were all, at a minimum, statements regarding the activities of the conspiracy, to conceal the activities of the conspiracy, or "statements made to execute or transact the business of the conspiracy." *See Reyes*, 798 F.2d at 384. Specially, the statements were made in furtherance of the racketeering conspiracy.

1. **Approval of IBB Expenses** – For example, Kathy Stapp advised that "IBB operated under the assumption that if Jones said it was a business expenses, it was a business expense." Stapp brought questionable expenses made by Defendant Newton Jones to the attention of Defendant Bill Creeden. Defendant Creeden told Stapp that "Defendant Jones would have to answer to the Department of Labor for the expense." Coconspirator One was responsible for reviewing the expenses of female employee who Defendant Newton Jones has a romantic relationship with. Coconspirator One flagged personal expenses from this employee that were paid for by the union and brought it to the attention of Defendant Creeden. Creeden responded, "If the receipts are there, just pay the fucking thing."

2. **Employment of Defendant Kateryna Jones, Defendant Cullen Jones and other employees** – Stapp advised that she was directed by Defendant Jones to retroactively pay Defendant Kate Jones for alleged work done for IBB while Defendant Kateryna Jones was living in Ukraine. Jones told Coconspirator One that Kateryna Jones would be hired to translate handbills and organizing material into Russian despite Coconspirator One knowing of very few members who spoke Russian and knowing

---

[3] Some statements may overlap and could fairly be categorized as falling into several categories.

of no previous concern for translating material. In 2023, Defendant Kateryna Jones told Stapp that she wanted to "retire" and keep her IBB medical benefits, but Defendant Fairley who was the acting International President said that Kate could not "retire" but only "resign." Additionally, Coconspirator One advised that he was given directions by Defendant Newton Jones to pay Defendant Kate Jones and believed the payment could have been in relation to a deferred compensation plan. Jones told Amy Wiser that he had not seen Cullen Jones (who was still an employee of the union) and specified that he had not seen Cullen Jones for several months even though they both worked at the union's Chapel Hill office. After Cullen was not showing up, Jones told Coconspirator One that they would lay Cullen off to "teach him a lesson." Coconspirator One fired Cullen who said, "I knew this was coming" only to have Jones rehire Cullen who again performed no work. Jones told Coconspirator One that he hired Shae Jones and Derek Zurowski because he wanted them to "follow in his footsteps." Defendant Jones instructed Stapp and Coconspirator One to start Bryan Daly's health insurance on day one contrary to the insurance provisions. Jones and Creeden instructed Stapp and Coconspirator One to allow Daly's widow to keep health insurance for life and Kathy Stap told Coconspirator One that "I guess now were are in the business of insurance fraud."

3. **Travel** – During his review of Defendant Jones's expenses during the IBB Article 17 investigation, both Defendants McManamon and Creeden flagged and identified an unauthorized airfare ticket to Ukraine totaling approximately $3,000 that Defendant Jones charged to his IBB credit card. Defendant Newton Jones in response to the inquiry advised that he had "other union business to attend overseas and thought it

was cheaper to fly to Ukraine and then the other destination than to fly to his destination directly." Hailey Rose will testify that Jones told her he traveled to Ukraine in 2011 to meet a woman. After Tom Baca questioned the need for international travel, Jones bragged to Amy Wiser about not inviting Baca on another trip and not speaking to him for a year.

4. **Vacations** – Members of the conspiracy enriched themselves by failing to enforce a duly adopted policy of the IBB limiting cash payment in lieu of vacation to two weeks per year, thereby enabling members of the conspiracy to receive cash payouts for unused vacation contrary to the policy and for allotted vacation hours which defendants had already used. Specifically, Coconspirator One will testify that when it came to the vacation policy passed by the IBB International Executive Committee in 2015, Defendant Jones said, "Fuck that policy," and chose not to follow it and the vacation policy was never implemented. Additionally, Coconspirator One will testify that during a trip to Spain that was purportedly for IBB business, Coconspirator One took a side trip to London and was accompanied by his spouse. Defendant Jones instructed Coconspirator One to expense the trip to IBB even though the London leg of the trip was clearly a personal vacation for Coconspirator One and his spouse.

5. **Union salary, hiring, full-time employment and bonuses** – Defendants and other members of the conspiracy enriched themselves and others by placing themselves and members of their families and friends in lucrative jobs within IBB with full benefits and reimbursed expenses when the individuals were not required to work full time. For example, Coconspirator One will testify that the decision to hire and fire anyone

at IBB resided entirely with Defendant Newton Jones. Coconspirator One advised that he only hired and fired individuals at the instruction of Defendant Newton Jones.

6. **Directives within IBB-** Hailey Rose will testify that after Defendant Jones told her not to speak to Tim Simmons. She asked Defendant Fairley if she should call Simmons and let him know since she reported to Simmons and Defendant Fairley told Hailey, "Well, then I wouldn't call him." McManamon told Simmons that he was not going to sign onto hiring another law firm because "he wasn't going to go against Newton Jones." Jones and Creeden told Simmons that they were not going to going to proceed with the IEC appointed Article 17 committee, and instead they would appoint an Article 17 committee consisting of McManamon and Creeden. John Fultz will testify that Jones approached him in Marco Island and asked him if he was talking to the FBI or DOL about the criminal investigation. Jones said, "Fuck you, John." Jones told Baca that his legal assistant could not work for him anymore and he was going to put her in the history department. When the criminal grand jury subpoena was served on IBB, Creeden made a joke to Coconspirator One that someone was going to be off to Leavenworth prison. After the criminal grand jury subpoena was served, Jones told Coconspirator one and Fairley, that "there must be a mole at headquarters" and "Fuck the Department of Labor" to which Fairley responded, "Newt, that's what they do to you."

### B. Emails Admissible Under 802(d)(2)

The government plans to identify and offer emails at trial as statements which are made by a coconspirator and that relate to the charged conspiracies and outlined above and therefore

admissible pursuant to Rule 801(d)(2)(E). The government will provide courtesy copies of exhibits to the Court and counsel for the defendants.

IV.  **ALTERNATIVE BASES FOR ADMISSABILITY OF STATEMENTS**

The statements of coconspirators set forth in this proffer should be admitted as non-hearsay under Rule 801(d)(2)(E).  Additionally, however, many of these statements are admissible on alternative grounds including: the defendants' own statements admissible pursuant to Rule 801(d)(2)(A);[4] statements not offered for the truth of the matter asserted; statements that constitute verbal action, such as the planning, directing, or agreement of the conspiracy, *see United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (noting statement "directing the conduct of a fellow conspirator or agreeing to follow directions" not offered for truth); statements not offered for their truth, but rather to put otherwise admissible statements in context.  Accordingly, statements by coconspirators may be admitted against the defendants in many instances without establishing the factual predicate required by Rule 801(d)(2)(E).

V.  **CONCLUSION**

The information in this proffer and that will be provided at the *James* hearing will establish, by a preponderance, that the conspiracies alleged in Counts 1, 49, and 53 of the Indictment existed, that each defendant named in the respective counts was a member of it, and that certain statements were made in furtherance of the conspiracy.

Respectfully submitted,

RYAN KRIEGSHAUSER
UNITED STATES ATTORNEY

---

[4] The governments expects that the vast majority of statements offered against a given defendant as a party opponent will have been in furtherance of the conspiracy and therefore admissible against co-defendants under Rule 801(d)(2)(E).

By: */s/Faiza H. Alhambra*
FAIZA H. ALHAMBRA
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6904
913-551-6541 (fax)
faiza.alhambra@usdoj.gov
Kan. S. Ct. No. 24525


By: */s/ Jabari B. Wamble*
JABARI WAMBLE
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
jabari.wamble@usddoj.gov
Kan. S. Ct. No. 22730

By: */s/ Vincent Falvo*
VINCENT FALVO
Trial Attorney
Violent Crime and Racketeering Section
United States Department of Justice
1301 New York Avenue, NW, Room 753
Washington, D.C. 20530
(202) 353-9384
vincent.falvo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2026, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

/s/ Faiza H. Alhambra
Faiza H. Alhambra
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas