UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

                                       Case No. 2:24-cr-20070-DDC

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),
CULLEN JONES (07),

    *Defendants*.

**Defendant William Creeden's
Motion to Exclude**

**Table of Contents**

Summary of the Argument ...................................................................................................3

Argument ...............................................................................................................................5

I.    The Court has ample authority to exclude and require supplementation. ...............5

II.   The Government's "Trial Exhibit List" is invalid for three distinct reasons. ........6

    A.    Tier 1 Violations: Non-exhibits must be excluded. ......................................7

    B.    Tier 2 Violations: Unidentified exhibits should be excluded. .......................8

    C.    Tier 3 Violations: Unspecified exhibits should be specified. .......................9

    D.    Precedent warrants meaningful relief...........................................................10

    E.    Serious prejudice confirms the need for meaningful relief. ........................12

    F.    Late supplementation cannot cure the prejudice. ......................................14

III.  Tier 1 Violations: Exclude the non-exhibits. ..........................................................16

    A.    Count-Number placeholders are not exhibits. ............................................16

    B.    Destination-plus-date entries are not exhibits............................................18

    C.    Topic labels, "sample" designations, and person-plus-theme entries
        are not exhibits. ..........................................................................................19

IV.   Tier 2 Violations: Exclude unless cured by March 19. ...........................................22

V.    Tier 3 Violations: Exclude unless cured by March 19. ...........................................33

Conclusion............................................................................................................................43

Certificate of Service ..........................................................................................................44

Defendant William Creeden moves for an order exclude evidence corresponding to the Government's Document 244 "Trial Exhibit List." Specifically, the motion divides the Government's Document 244 entries into Tier 1, Tier 2, and Tier 3 to seek an order that (1) excludes the Tier 1 entries without more, and (2) excludes the Tier 2 and Tier 3 entries unless the Government by March 19, 2026, supplies to Defendants for each exhibit at issue both a production identifier and an actual copy of the exhibit.

**Summary of the Argument**

The Government's Document 244 "Trial Exhibit List" is not a usable exhibit list. It is a 436-entry filing that often does not identify any exhibit at all and nowhere provides the production identifiers (e.g., Bates numbers) needed for meaningful trial preparation. That failure violates both the Case Management Order, Doc. 29, § 11, and the Scheduling Order, Doc. 101 at 2, which required the parties to file exhibit lists by March 13, 2026, so that both sides would be afforded preparation time that is both adequate and symmetrical.

The Government did not meet that obligation. It filed a document that defeats the very function of an exhibit-list requirement and deadline. The violations are extraordinarily severe in both magnitude and volume. The violations' severity requires severe remedies.

Defendant studied all of the Government's 436 entries to generate a three-tiered system of analysis. This best accommodates the need for well-tailored remedial measures.

Tier 1 entries are not exhibits at all. They identify subjects, themes, count numbers, or destinations, but no document. They are incurably defective. The exhibits corresponding to the Tier 1 entries should be excluded immediately, without more.

Tier 2 entries point toward real documents, but not with enough specificity to locate the actual item in the production; and Tier 3 entries identify actual documents, but still omit the production identifiers needed to tie the listed exhibit to the discovery record. Exhibits linked to the Tier 2 and 3 entries should be excluded unless the Government by March 19, 2026, supplies both a production identifier and a copy of the exhibit.

The prejudice is immediate and serious. Creeden complied with the Court's deadline and disclosed actual exhibits the Government can prepare against. The Government did not. Yet now it has a roadmap to the defense case while the defense is left guessing which documents the Government may try to offer. That asymmetry is prejudicial in itself. The practical harms are worse. Counsel cannot prepare exhibit-specific objections, cannot prepare cross-examination tied to actual documents, and cannot reliably determine which entries matter to Creeden in this large multi-defendant case.

Late supplementation would not cure that prejudice. The March 13 deadline existed to identify the exhibits at issue while there was still time for meaningful pretrial preparation. Once that date passed without a usable exhibit list, the lost time was gone. Even expedited motion practice would likely produce any cure too late to restore the preparation window the Court's schedule was designed to provide. And the defense is already spending critical pretrial time litigating for notice it should have received on March 13. The Court should enforce the deadline at the point of noncompliance, not excuse it after the fact.

Defendant does not lightly file a motion of this kind, and certainly does not lightly seek extraordinary relief on a compressed timetable. But the prejudice described above is already underway, and delay only worsens it. Government counsel is being notified of this motion immediately. Under these circumstances, strict adherence to ordinary conferral practice would not serve the Court, the parties, or the administration of justice. If the Government can take prompt action that materially moots any part of this motion, Defendant will promptly advise the Court and narrow the requested relief accordingly. But because there is no realistic prospect of conferral successfully serving its usual purposes, the Court is best served by receiving the motion now, with immediate notice to the Government, rather than after further loss of critical pretrial time.

**Argument**

### I.     The Court has ample authority to exclude and require supplementation.

This motion asks the Court to enforce the basic function of an exhibit list. An exhibit list must identify the specific documents the proponent intends to offer so the opposing party can locate them in discovery and prepare for trial. The Government's filing does not perform that function, and the Court has ample authority to require compliance and impose appropriate sanctions when a party fails to do so.

Federal Rule of Criminal Procedure 16(d)(2) authorizes this Court to impose sanctions when a party fails to comply with a discovery or pretrial order, including an order to "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). This Court's CMO independently incorporates the same remedial authority.

5

Doc. 29, § 12 (the Court may "prohibit that party from introducing the undisclosed evidence" and "enter any other order that is just under the circumstances").

The CMO requires that "[a]ll discovery in electronic media must be accessible, searchable, and organized," and that "[t]he disclosing party must not degrade the searchability of documents or eliminate metadata associated with files as part of the document-production process." Doc. 29, § 11. An exhibit list is a critical terminal discovery event before trial. If it fails to fairly connect each listed "exhibit" to an identifiable document—through a Bates number or equivalent unique identifier—it degrades the usefulness of everything that preceded it. It's supposed to be a map, not a scavenger hunt.

The Due Process Clause independently requires that criminal defendants receive meaningful notice of the evidence to be used against them, with sufficient time to prepare a defense. *See Wardius v. Oregon*, 412 U.S. 470, 474 (1973) (the Due Process Clause prohibits discovery rules that are not "a two-way street"); *cf. Taylor v. Illinois*, 484 U.S. 400, 411–12 (1988) (exclusion is an appropriate sanction for discovery violations that prejudice the ability to prepare). Where exhibit designations are so vague that a defendant cannot determine what documents will be offered, Due Process is imperiled. *See Wardius*, 412 U.S. at 474.

## II.    The Government's "Trial Exhibit List" is invalid for three distinct reasons.

The defect here is not abstract. The Court required exhibit lists by March 13, 2026, so the parties could move from discovery to trial preparation with a common set of identified documents. Doc. 101 at 2. The Defendants did exactly that. Their joint exhibit

list, Doc. 249, identifies each exhibit by description, date, and Bates number. The Government did not. Doc. 244. Its 436-entry filing often fails to identify any document at all and never gives the production coordinates needed to locate the exact item in discovery. Defendant Creeden therefore reviewed each entry using a single practical question: does this entry identify a specific document that the defense can find, analyze, and prepare to meet at trial? On that measure, the Government's list breaks into three categories of noncompliance, each calling for a different remedy.

### A.      Tier 1 Violations: Non-exhibits must be excluded.

Tier 1 entries fail at the threshold. They do not identify evidence. They identify subjects, count allegations, destinations, or themes. An exhibit list cannot perform its basic notice function if it does not point to a document at all.

Exemplifying the Tier 1 violations are entries such as "Boilermakers Union Structure," Doc. 244 at 1 (Ex. No. 1), "Europe 2013, 2014," Doc. 244 at 13 (Ex. No. 335), and "Newton B. Jones (salary and benefits)," Doc. 244 at 13 (Ex. 401). It also includes count-number placeholders such as "Count Two UAE, Belgium, Netherlands Sept 2019." Doc. 244 at 12 (Ex. 302). Those descriptions may gesture toward areas of proof. But they do not identify an email, invoice, itinerary, folio, ledger entry, reimbursement record, report, or any other discrete document the defense can locate in the production.

These do not merely describe exhibits imperfectly; they describe no exhibits at all. They leave the Government free to choose later which documents within a broad field of

proof it may try to offer. That defeats the purpose of the March 13 exhibit-list deadline and expands, rather than narrows, the universe the defense must search.

Because the defect is categorical and substantive, not merely clerical or procedural, it cannot be cured by later supplementation; and even if it could, the violation's severity and resulting prejudice foreclose that kind of grace. The Court should therefore issue an order that excludes the Tier 1 entries without more.

### B.    Tier 2 Violations: Unidentified exhibits should be excluded.

Tier 2 entries point toward evidence but fail to identify the specific document the Government intends to offer. They reference categories, collections, or undefined "samples" rather than a discrete item in the production. An exhibit list that leaves the defense guessing among many possible documents does not satisfy the Court's disclosure framework.

Exemplifying the Tier 2 violations are entries such as "Newton Jones Personnel File at Boilermakers Union," Doc. 244 at 1 (Ex. 7), "Mandiant Invoices and Payment for Forensic Surveillance," Doc. 244 at 4 (Ex. 56), and "Emails Re Mandiant Search of Boilermakers Union Email System," Doc. 244 at 4 (Ex. 60). Other entries refer to undefined samples, such as "Sample of Monthly AMEX Bill," Doc. 244 at 6 (Ex. 99), or "Sample Expensify Report Aug-Sept 2019," Doc. 244 at 6 (Ex. 100). Each description points toward a body of documents, not a specific exhibit.

The Tier 2 defects are severe. The discovery production contains numerous documents that could fit these descriptions. Without document-level identifiers—Bates numbers, filenames, page ranges, or other unique production coordinates—the defense cannot determine which document the Government plans to introduce. Tier 2 entries therefore fail to provide the notice the Scheduling Order required on March 13.

To remedy the Tier 2 violations, the Court should issue an order that excludes the Tier 2 entries unless the Government by March 19, 2026, supplies to Defendants both a production identifier and an actual copy of the exhibit. That remedy is tailored and proportionate because it requires the Government to do only what a party with actual exhibits in mind should already be able to do. The Scheduling Order required the Government to identify its exhibits with sufficient specificity on March 13. If the Government in fact had a specific document in mind for each curable Tier 2 entry, it should be able to provide both the identifying information and a copy with minimal effort. Any entry not cured by March 19 should therefore be excluded.

### C.    Tier 3 Violations: Unspecified exhibits should be specified.

Tier 3 entries identify recognizable documents but omit the production identifiers needed to locate the precise item in discovery. Without Bates numbers or equivalent identifiers, the entries remain incomplete under the Court's discovery framework. The defect is narrower than Tier 2 but still consequential. Without production identifiers, the defense cannot determine which version of which document the Government will offer.

9

Exemplifying the Tier 3 violations are entries such as "Newton Jones Letter on Fiduciary Responsibility (May 2015)," Doc. 244 at 3 (Ex. 17). These descriptions allow the defense to understand the general document the Government has in mind. But none of the 436 entries in Document 244 provides a Bates number or comparable production identifier tying the exhibit to a specific item in the discovery record.

That omission defeats the CMO's need for discovery to be "accessible, searchable, and organized." Doc. 29 § 11. Large productions often contain multiple copies, variants, or versions of the same document. Without a production identifier, the defense cannot know which version the Government intends to offer or where it appears in the record.

To remedy the Tier 3 violations, the Court should issue an order that excludes the Tier 3 entries unless the Government by March 19, 2026, supplies to Defendants both a production identifier and an actual copy of the exhibit. Again, since the Government was of course supposed to have a specific document in mind when making each of these faulty submissions, requiring prompt copy transmission is a tailored and proportionate remedy.

### D.    Precedent warrants meaningful relief.

Tenth Circuit precedent authorizes all of the relief Defendant seeks here. The court has repeatedly approved exclusion, compelled compliance, and other case-management remedies when a party violates discovery obligations or omnibus pretrial orders. *See United States v. Wicker*, 848 F.2d 1059, 1060–62 (10th Cir. 1988); *United States v. Russell*, 109 F.3d 1503, 1510–12 (10th Cir. 1997); *United States v. Jones*, 730 F.2d 593, 596–97 (10th Cir. 1984); *United States v. Miller*, 499 F.2d 736, 744–45 (10th Cir. 1974); *United States v.*

*Leaphart*, 513 F.2d 747, 749 (10th Cir. 1975). These decisions apply a consistent rule: district courts have broad discretion to enforce pretrial disclosure requirements and to impose the remedies necessary to protect trial preparation. Three principles control here.

First, a district court may exclude evidence offered in violation of disclosure orders. *See, e.g.*, *Wicker*, 848 F.2d at 1060–62; *Russell*, 109 F.3d at 1510–12.

Second, the court need not find bad faith before acting. Negligent noncompliance is sufficient when delay impairs preparation or disrupts the court's schedule. *See Wicker*, 848 F.2d at 1061–62; *Russell*, 109 F.3d at 1511–12.

Third, the same authority applies to violations of omnibus and other pretrial orders, not just Rule 16. *Russell*, 109 F.3d at 1510–11; *Jones*, 730 F.2d at 596–97; *Miller*, 499 F.2d at 744–45; *Leaphart*, 513 F.2d at 749.

All of these rules apply to the matter of pretrial exhibit designations. *United States v. Rayco, Inc.*, 616 F.2d 462 (10th Cir. 1980), affirmed exclusion of exhibits that a pretrial list either did not describe at all or described insufficiently. *Id.* at 463–64. So too here.

The Court ordered exhibit lists by March 13, 2026. Doc. 101 at 2. The Government filed a 436-entry list that often does not identify any document and nowhere provides Bates numbers. Doc. 244. The Court can and should use its ample authority to enforce the consequences of this severe noncompliance immediately, since time is of the essence.

### E.     Serious prejudice confirms the need for meaningful relief.

The Court's March 13 exhibit deadline was not a standalone event. It was the first in a sequence of interdependent deadlines that the Court's Scheduling Order set in motion to ensure orderly preparation for a four-to-five-week trial beginning May 4, 2026:

March 13: Exhibit lists and motions in limine due.

March 31: Responses to motions in limine due.

April 10: Motions in limine conference.

April 17: Proposed jury instructions due.

April 17: JERS exhibits due to the Court.

April 23: Pretrial conference.

May 4: Trial.

*See* Doc. 101.

Each deadline downstream of March 13 presupposes that the exhibit lists filed on that date actually identify exhibits. The limine briefs due March 31 require the parties to know what exhibits are in play so they can assess relevance, foundation, and admissibility. The April 10 conference requires the Court and all parties to discuss exhibit disputes with specificity. Not to mention the looming May 4 trial itself. None of that preparation is fairly possible when more than half of the Government's 436 entries do not identify a document.

The prejudice is not theoretical, and it is not prospective. It is concrete and present, occurring now in at least four very substantial forms that inform the remedial calculus.

*First*, counsel cannot prepare exhibit-specific objections. An entry like "Newton Jones Personnel File at Boilermakers Union" (Ex. 7) or "Emails Re Mandiant Search of Boilermakers Union Email System" (Ex. 60) does not tell the defense which documents the Government will offer. Without that detail, the defense cannot assess hearsay, foundation, authentication, Rule 403, or any other evidentiary objection at the document level.

Second, counsel cannot prepare cross-examination keyed to specific documents. An exhibit list that identifies themes rather than documents prevents that preparation entirely.

Third, counsel cannot determine which of the Government's 436 entries are relevant to Defendant Creeden as opposed to the other four Defendants. This complex action's very large production universe makes that triage impossible without document-level identification. The Government's list forces the defense to treat every vague entry as potentially applicable to every defendant — a burden that multiplies preparation time by orders of magnitude.

*Fourth,* a severe Due Process asymmetry now plagues this case. Defendant Creeden complied with the March 13 deadline in full. His exhibit list (the joint defense list) identifies every exhibit at the document level with a description, date, and Bates number. Doc. 249. The Government now possesses a complete roadmap of the defense case. It knows which documents Creeden will introduce, where they appear in the production, and how they relate to the charges. The Government can—and presumably already is—preparing to meet those exhibits with the full force of its most estimable pretrial litigating resources.

Defendant Creeden possesses no comparable roadmap of the Government's case. The discovery framework that the Due Process Clause requires to be "a two-way street," *Wardius v. Oregon*, 412 U.S. 470, 474 (1973), has become a one-way ratchet. Every day this condition persists compounds the strategic advantage the Government has obtained by its noncompliance. Late supplementation does not return that advantage. It only limits how much larger the advantage grows.

**F.      Late supplementation cannot cure the prejudice.**

The Government will likely respond that it can cure the deficiencies by providing supplemental identification later. That response fails for five independent reasons.

*First*, the deadline has passed. The Court ordered exhibit lists by March 13, 2026. Doc. 101. That order did not say "file exhibit lists by March 13, or whenever you get around to identifying your actual exhibits." It set a date. Deadlines in scheduling orders carry the force of court orders. See Fed. R. Crim. P. 16(d)(2); Doc. 29, § 12. An offer to comply after the deadline has passed is not compliance. It is a request for leniency that the Court has discretion to deny. *See United States v. Wicker*, 848 F.2d 1059, 1060–62 (10th Cir. 1988) (affirming exclusion for discovery noncompliance); *United States v. Russell*, 109 F.3d 1503, 1510–12 (10th Cir. 1997) (same; bad faith not required).

*Second*, the cure timeline is illusory. If the Government opposes, briefing and a ruling would likely push any compelled supplementation into early April, with actual compliance not reaching the defense until mid-April at the earliest—one month late, two weeks before

trial, and after critical pretrial deadlines have already passed or lost much of their value. Even an expedited schedule would not materially fix that problem.

*Third*, time lost to this motion is time lost to trial preparation. Every hour Defendant Creeden's counsel spends briefing this motion — researching the Government's vague entries, sorting 436 listings into tiers, preparing a motion and supporting analysis — is an hour diverted from the trial preparation that the March 13 deadline was supposed to enable. That diversion is a direct consequence of the Government's noncompliance. It cannot be undone by belated supplementation. The preparation time is gone. In a case heading to a four-to-five-week trial in 51 days, with a discovery production of well over 1,000,000 documents, the loss is not trivial. It is structural.

*Fourth*, the asymmetry cannot be reversed. Even if the Government supplements promptly, the strategic imbalance created by its noncompliance is permanent. The Government has possessed the Defendants' complete, Bates-numbered exhibit list since March 13. It has been able to prepare — to analyze exhibits, develop objections, plan cross-examination, and refine trial strategy — with full knowledge of the defense case. Defendant Creeden has been unable to do any of the same with respect to the Government's case. Supplementation in mid-to-late March or April narrows the gap in calendar days. It does not close the gap in preparation. The Government will have had weeks of unilateral advantage that no remedy can recapture. That is precisely the one-way discovery regime that *Wardius* forbids. 412 U.S. at 474.

*Fifth*, the Court's scheduling authority requires enforcement at the point of noncompliance, not after the fact. If the Government can miss the March 13 exhibit-list deadline, file a noncompliant list, and then cure weeks later without consequence, the deadline is advisory. Every future scheduling order in this case — and every case before this Court — is weakened. The Tenth Circuit has repeatedly recognized that district courts must enforce pretrial deadlines to maintain the integrity of case management. *See Russell*, 109 F.3d at 1510–12; *Wicker*, 848 F.2d at 1061–62; *Rayco*, 616 F.2d at 463–64. The appropriate remedy is not to extend the deadline retroactively. It is to enforce it.

### III.    Tier 1 Violations: Exclude the non-exhibits.

The following Document 244 entries constitute Tier 1 violations. These entries are not deficient exhibits. They are not exhibits at all. They identify no document the defense can locate, assess, or prepare to meet at trial. That defect cannot be cured by supplementation because there is nothing to supplement. The only remedy that fits the violation is exclusion. The Court should therefore exclude all Tier 1 entries.

#### A.    Count-Number placeholders are not exhibits.

The following entries constitute a Tier 1 violation because they substitute an accusation for an exhibit. A count number shows what the Government alleges. It does not tell the defense what the Government plans to offer to prove it. Adding a destination and date range does not fix that problem. It still leaves the exhibit undefined. The entry could refer to an email, itinerary, invoice, folio, ledger entry, reimbursement record, or some

16

other document entirely. A proper exhibit list narrows the field to a specific item. These entries do the opposite. They preserve the entire field and force the defense to guess.

**Tier 1 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 302 | Count Two UAE, Belgium, Netherlands Sept 2019 |
| 303 | Count Three Stuttgart, Germany Sept 2019 |
| 304 | Count Four Dusseldorf, Germany Oct 2019 |
| 305 | Count Five Marseille, Steinbach Nov 2019 |
| 306 | Count Six Ukraine, Italy Nov 2019 |
| 307 | Count Seven Geneva Switzerland Nov 2019 |
| 308 | Count Eight Geneva Switzerland Nov 2019 |
| 309 | Count Nine Geneva Switzerland Nov 2019 |
| 310 | Count Ten Madrid, Spain Dec 2019 |
| 311 | Count Eleven London, England Jan-Feb 2020 |
| 312 | Count Twelve New Zealand Feb 2020 |
| 313 | Count Thirteen Italy to Marco Island Feb-Mar 2020 |
| 314 | Count Fourteen Italy Aug 2021 |
| 315 | Count Fifteen Bremen, Germany Oct 2021 |
| 316 | Count Sixteen London, Scotland, Amsterdam Oct-Nov 2021 |
| 317 | Count Seventeen Bahamas Mar 2022 |
| 318 | Count Eighteen Geneva Switzerland Mar-Apr 2022 |
| 319 | Count Nineteen Amalfi Coast Apr 2022 |
| 320 | Count Twenty Amalfi Coast Apr-May 2022 |
| 321 | Count Twenty-One York, Sheffield, England May 2022 |

17

**Tier 1 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 322 | Count Twenty-Two Bilbao Spain June 2022 |
| 323 | Count Twenty-Three Netherlands Switzerland June 2022 |
| 324 | Count Twenty-Four London to North Carolina July 2022 |
| 325 | Count Twenty-Five Italy July 2022 |
| 327 | Count Twenty-Seven Bremen, Germany Oct 2022 |
| 328 | Count Twenty-Eight Berlin Germany Jan 2023 |
| 320 (sic) | Count Thirty Norway, Belgium, France June 2023 |
| 331 | Count Thirty-One Cape Town, South Africa June 2023 |
| 332 | Count Thirty-Two Iceland June 2023 |
| 333 | Count Thirty-Three Steinbach, Germany Oct 2023 |

Doc. 244 at 13.

### B.    Destination-plus-date entries are not exhibits.

The following entries constitute a Tier 1 violation for a simpler reason: they describe an event, not evidence. A place and time period may identify a trip. They do not identify the document the Government intends to introduce about that trip. The missing information is exactly what matters for trial preparation—document type, sender, recipient, Bates number, filename, or some other unique marker that distinguishes one record from another. Without that information, the entry does not function as notice of an exhibit. It functions as a label for a subject the Government may try to prove through any number of unidentified records.

18

**Tier 1 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 334 | Sardinia 2012 |
| 335 | Europe 2013, 2014 |
| 336 | Thailand November 2013 |
| 337 | Madrid April 2014 |
| 338 | Italy-Spain May-June 2014 |
| 339 | Lima Sept-Oct 2014 |
| 340 | Paris November 2014 |
| 341 | Italy September 2015 |
| 342 | Western Australia October-November 2016 |
| 343 | Sardinia May 2017 |
| 344 | Italy January 2018 |
| 345 | Italy May-June 2018 |
| 346 | Venice September 2018 |
| 347 | Italy June 2019 |

Doc. 244 at 13.

> **C.     Topic labels, "sample" designations, and person-plus-theme entries are not exhibits.**

The following entries constitute a Tier 1 violation because the descriptions are open-ended by design. Topic labels identify themes, not documents. "Sample" designations admit that multiple documents exist but refuse to say which one the Government selected. And person-plus-theme entries sweep together unknown sets of records tied only by a name and a broad subject. Those descriptions do not narrow the universe of possible exhibits.

They leave it unbounded. That is the opposite of what an exhibit list must do. Instead of identifying the item to be offered, these entries reserve a field of proof for later selection. That is not notice of an exhibit.

**Tier 1 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 1 | Boilermakers Union Structure |
| 2a | International officers of the Boilermakers Union |
| 2b | Structure of the Headquarters Office of the Boilermakers Union |
| 2c | Boilermakers Union International Officers and Employees |
| 101 | Sample Newton Jones Personal Charges |
| 102 | Examples of Chapel Hill Restaurant Receipts |
| 157 | Sample of Newton and Kateryna Jones Vacations |
| 158 | Fairley and McManamon--Department of Labor Vacation Plan Findings |
| 159 | Bill Creeden--How we like to Travel |
| 300 | Sample International Costs—Airfare |
| 301 | Sample International Costs-Hotels |
| 348 | Trips for Irish Welders and Holcim Cement |
| 349 | Sample of Vacations for Newton and Kateryna Jones |
| 350 | Newton and Kateryna Jones International Expenses on AMEX |
| 351 | Side Trips Paid by Boilermakers Union |
| 400 | Compilation of Salary and Expense Payments |
| 401 | Newton B. Jones (salary and benefits) |
| 402 | William Creeden (salary and benefits) |
| 403 | Kateryna Jones (salary and benefits) |

20

**Tier 1 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 403a | Kateryna Jones Gross wages and benefit contributions (2019-2023) |
| 404 | Cullen Jones (salary and benefits) |
| 404a | Cullen Jones Gross wages and benefit contributions |
| 405 | Warren Fairley (salary and benefits) |
| 406 | Lawrence McManamon (salary and benefits) |
| 407 | Shae Jones (salary and benefits) |
| 408 | Derek Zurowski (salary and benefits) |
| 409 | Summary of Pay Raises - Shae Jones and Derek Zurowski |
| 410 | Cash Payouts of Vacation Time - Newton Jones |
| 411 | Cash Payouts of Vacation Time - William Creeden |
| 412 | Cash Payouts of Vacation Time - Kate Jones |
| 413 | Cash Payouts of Vacation Time - Warren Fairley |
| 414 | Cash Payouts of Vacation Time - Lawrence McManamon |
| 415 | Cash Payouts of Vacation Time - Cullen Jones |
| 416 | Comprehensive List of All International Trips (2009-2023) |
| 417 | Newton and Kateryna Jones International Travel Expenses |
| 418 | List of Tyler Brown International Trips |
| 419 | List of Amy (Wiser) Martin International Trips |
| 420 | List of International Trips for Warren Fairley |
| 421 | List of International Trips for Lawrence McManamon |
| 422 | List of International Trips for Irish Welders and Holcim Cement |
| 423 | Newton and Kate Jones Meals in Chapel Hill area (2013-2023) |

**Tier 1 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 423a | Newton and Kateryna Jones Restaurant Chapel Hill area 2013-2023 |
| 424 | Master AMEX Charges and Credits (Scan Written) |
| 425 | Newton Jones Debits and Credits |
| 426 | Kateryna Jones Debits and Credits |
| 427 | Total Relocation Expenses Per IBB General Ledger |
| 428 | Cullen Jones Relocation Expenses Per IBB General Ledger (2013-2023) |
| 428a | Cullen Jones--Film School Relocation Expenses Per IBB General Ledger |
| 429 | Derek and Shae Relocation Expenses |
| 433 | Bank of Labor Wages and Benefits Summary--Jones and Creeden |
| 434 | Distributions from Bank of Labor Retirement Plan to Jones and Creeden |
| 435 | Distributions from National Pension Trust to Jones and Creeden |

Doc. 244 at 1-15.

## IV.    Tier 2 Violations: Exclude unless cured by March 19.

These are the Document 244 listings that constitute Tier 2 Violations. These entries point toward something, but not enough. They leave the defense guessing which document the Government intends to use, and that is no exhibit list. The Court should therefore issue an order that excludes the Tier 2 entries unless the Government by March 19, 2026, supplies to Defendants both a production identifier and an actual copy of the exhibit.

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 6 | Elevation of Newton Jones to International President of the Boilermakers Union | No date, no document type |
| 7 | Newton Jones Personnel File at Boilermakers Union | Collection, not a document |
| 10 | Bill Creeden Personnel File (redacted) at Boilermakers Union | Collection |
| 11a | Minutes of the International Executive Council (IEC) of the Boilermakers Union_2009-2024 WITH ATTACHMENTS | 15-year collection |
| 11b | Minutes of the International Executive Council (IEC) of the Boilermakers Union_2009-2024 WITHOUT ATTACHMENTS | 15-year collection |
| 11c | Spreadsheet of the Meetings of the International Executive Council (IEC) of the Boilermakers Union_2009-2024 | 15-year compilation |
| 12 | Minutes of the International Executive Council (IEC) of the Boilermakers Union June -December 2023 (Fairley Presidency) | 7-month range |
| 13a | Voting Sheets of the International Executive Council (IEC) | No date range |
| 13b | Voting Tally Sheets of the International Executive Council (IEC) | No date range |
| 15 | Report of Senior Department of Labor Investigator Lauren Stojak | No date |

23

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 20 | Boilermakers′ Union Expense Report Form | Which form? No date |
| 26 | Boilermakers Union Policy Handbook for Local Lodges (October 2023) | Multi-document handbook |
| 27 | AMEX Records--International Vice President John Fultz | No date range |
| 35 | Lodging Cost of Maui, Hawaii IEC Meeting | No date, no document type |
| 36 | Lodging Cost of Wailea, Hawaii IEC Meeting | No date, no document type |
| 37 | Cost of Marco Island, Florida CSO Conference Meeting | No date, no document type |
| 38 | Cost of Naples, Florida CSO Conference Meeting | No date, no document type |
| 55 | File of Newton Jones′ International Assignments of Boilermaker Union Employees | Collection |
| 55a | Sample of Newton Jones′ Assignments of Boilermaker Union Employees to Non-European Foreign Trips | ″Sample″ — undefined scope |
| 56 | Mandiant Invoices and Payment for Forensic Surveillance | Multiple invoices, no dates |
| 57 | Draft Mandiant Report of Search of Boilermakers Union Email System | No date |

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 58 | Report on Search Terms Used in Mandiant Forensic Surveillance | No date |
| 59 | Johnny Baca Report on Use of Mandiant | No date |
| 60 | Emails Re Mandiant Search of Boilermakers Union Email System | Multiple emails, no dates, no senders |
| 65 | Kateryna Jones Personnel File at Boilermakers Union | Collection |
| 65a | Kateryna Jones Personnel File at Boilermakers Union – Pink | Collection |
| 67a | Sara Baez Processing of Newton and Kateryna Jones Expenses | No date, no document type |
| 67b | Hailey Rose Scheduling for Newton and Kateryna Jones | No date, no document type |
| 68 | Cullen Jones Personnel File at Boilermakers Union | Collection |
| 69 | Our Films _ International Brotherhood of Boilermakers | No date, no document type |
| 70 | Use of Wide Awake After August 2023 | No document type |
| 71 | Wide Awake Films--Video Excerpts | Undefined excerpts, no date |
| 73 | Wide Awake Films--Delivery of FLAEI Films | No date |
| 76 | Shae Jones Personnel File at Boilermakers Union | Collection |
| 77 | Derek Zurowski Personnel File at Boilermakers Union | Collection |

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 78 | Newton Jones' Explanation of Kate Jones Job Duties (June 2023) | Undefined document type |
| 80 | Newton Jones Letters Raising Shae Jones salary | Multiple letters, no dates |
| 81 | Newton Jones Letters Raising Derek Zurowski's Salary | Multiple letters, no dates |
| 84 | Graphic Designers (BLS) | No date, unclear document |
| 85 | Computer User Support Specialists (BLS) | No date, unclear document |
| 87 | Cullen Jones Relocation Orders | Multiple, no dates |
| 88 | Shae Jones-Derek Zurowski Relocation Orders | Multiple, no dates |
| 91 | Boilermakers Union Health Care Plan Participation summary | No date |
| 92a | Brian Daly Registration in Boilermakers Union Benefit Programs | No date |
| 94 | Enrollment Summary for Boilermakers Union Health Care Plan | No date |
| 97 | Brian Daly personnel file from Boilermakers Union | Collection |
| 99 | Sample of Monthly AMEX Bill (March-April 2022) | "Sample" — which bill? |
| 100 | Sample Expensify Report Aug-Sept 2019 | "Sample" — which report? |

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 105 | Orders for Alcohol for Newton Jones on Master Accounts | Multiple, no dates |
| 106 | Newton Jones Charges for Alcohol on Master Account | No date range |
| 107 | Newton Jones Orders for Prosecco and Cabernet | No date, no document type |
| 111 | Boilermakers Union Policy on Foreign Assignments | No date |
| 112 | TripIt Records | Collection, no date range |
| 113 | Phee Jungsun Expenses as Guest of Boilermakers Union | No date |
| 114 | Manuel Cortes Expenses as Guest of Boilermakers Union | No date |
| 115 | James O'Leary $22K Expenses (June 2019) | What documents? |
| 117a | Bill Creeden Invitation to Host Italian Visitors | No date |
| 117c | Hosting Italian Visitors (2013) | What document? |
| 119 | Cash Reimbursement for Tips to Newton Jones (2017-2019) | Date range, no document specifics |
| 120 | TripIt Record for McCall trip (Italy 2014) | Borderline |
| 120a | TripIt McCall Trip (Italy 2018) | Borderline |
| 124 | Lawrence McManamon $11K airfare to Munich | No date |
| 126 | AMEX Newton and Kateryna Jones International Expenses (without airfare) | Collection, no date range |

27

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 127 | Newton Jones′ Explanation Regarding International Travel (June 2023) | Undefined document type |
| 135 | Cullen Jones Cash Payouts for Vacation | Multiple, no dates |
| 136 | Newton Jones Cash Payouts for Vacation Requests | Multiple, no dates |
| 137 | Newton Jones ADP Statements and Vacation Backups | Collection |
| 138 | Kateryna Jones ADP Statements and Vacation Backups | Collection |
| 139 | Kateryna Jones Cash Payouts for Vacation | Multiple, no dates |
| 141 | August 2023 Cash Payouts for Vacation | What documents? |
| 142 | Warren Fairley Requests for Cash Payouts for Vacation | Multiple, no dates |
| 146 | Bill Creeden Vacation--Boar Hunting in Italy | No date |
| 146a | Creeden—Alaska | No date, no document type |
| 147 | Bill Creeden Vacation—Argentina | No date |
| 148 | Bill Creeden Vacation—Rome | No date |
| 149 | Bill Creeden--Credit Card Expenses | Collection |
| 150 | Bill Creeden Submitted Expenses and Receipts | Collection |
| 152 | Bill Creeden--Request for Cash Payout of 74 Weeks of Vacation | No date |
| 167 | Purchase of Lucid Air Luxury Car--Newton Jones | No date |
| 168 | Boilermakers Union Historic Automobile Policies | Collection |

28

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 169 | Boilermakers Union Automobile Policies 2017, 2022 | "Policies" plural |
| 177 | Translation--The Importance of Unions to Workers | No date |
| 178 | Bill Creeden combined payroll from Bank of Labor | Collection, no date range |
| 179 | Newton Jones combined payroll from Bank of Labor | Collection, no date range |
| 180 | Bank of Labor Board of Directors Minutes 2021-2022 | 2-year collection |
| 184 | Bank of Labor Board Approval of Change of Control Agreement | No date |
| 185 | Resolution--CEO Bank of Labor | No date |
| 186 | 2020 Bank of Labor Vacation Payout to Newton Jones and Bill Creeden | Has year |
| 187 | Denial of Newton Jones' Final Bank of Labor Cash Payout for Vacation | No date |
| 188 | Newton Jones combined Salary Reduction Agreements from Bank of Labor | Collection |
| 189 | Newton Jones signed distribution form from Bank of Labor | No date |
| 190 | Bank of Labor email response to Bill Creeden with spreadsheet 2020-21 expenses | Has date range |
| 193 | Newton Jones Bank of Labor Sample Paystub | "Sample" — which? |
| 193a | Newton Jones Bank of Labor Retirement Plan 2020 | Has year |

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 194c | Executive Life Insurance summary from Bank of Labor | No date |
| 194d | Bank of Labor Supplement Life Insurance Enrollment | No date |
| 195 | Bank of Labor Retirement Plan combined Adoption Agreements | Collection |
| 196 | Bank of Labor Retirement Plan combined Summary Plan Descriptions | Collection |
| 198 | Newton Jones combined retirement plan account statements from Bank of Labor | Collection |
| 199a | Bill Creeden Bank of Labor Retirement Plan 2020 | Has year |
| 196b | Bill Creeden Bank of Labor Sample Paystub | "Sample," no date |
| 199c | Bill Creeden combined retirement plan account statements from Bank of Labor | Collection |
| 200 | Newton Jones signed distribution form from Bank of Labor | No date |
| 200a | Bill Creeden signed distribution form from Bank of Labor | No date |
| 201 | Combined Pension Plan Trust Documents from Boilermaker-Blacksmith National Pension Trust | Collection |
| 204 | MORE Fund Brochure | No date |
| 204a | MORE workflow | No date, no document type |

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 207 | Example of MORE Application SE | "Example" — which? |
| 208 | Bank of Labor Management Conflict of Interest Policy | No date |
| 209 | Opening MORE Account at Bank of Labor | No date, no document type |
| 210 | Use of MORE Fund as collateral for Local 83 loan | No date, no document type |
| 213 | Newton Jones Application and Correspondence from National Boilermaker-Blacksmith Pension Trust | Collection |
| 214 | Bill Creeden - Pension Payment Detail from National Boilermaker-Blacksmith Pension Trust | No date range |
| 215 | Bill Creeden - Pension Statements from National Boilermaker-Blacksmith Pension Trust | Collection |
| 216 | Newton Jones Pension Statements from National Boilermaker-Blacksmith Pension Trust | Collection |
| 217 | Jones Lets Cullen Choose Germany Trip | No date |
| 218 | Newton Jones--Costs of Private Jet | No date, no document type |
| 219 | Warren Fairley-Newton Jones Re Ray Ventrone Verdict | No date |
| 220 | Brian Opland Article | No date |
| 221 | Anti-Jones Flyers (2012) | "Flyers" plural |

31

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 222 | Emergency Trusteeship on Local 104 | No date |
| 223 | Producers and Directors _ U.S. Bureau of Labor Statistics | No date |
| 229 | Relocation to New Chapel Hill Office | No date, no document type |
| 230 | Hailey Rose--Maximum vacation request | No date |
| 231 | Newton Jones′ Explanation of Dual Roles Kate Jones resignation 2018 | Has year |
| 232 | Newton Jones Skipping Meetings on International Trips | No date, no document type |
| 353 | O&E plan contribution records - Kateryna Jones | No date range |
| 354 | O&E plan contribution records - Cullen Jones | No date range |
| 355 | Ameritas Life Insurance premium billing and payment records from IBB | Collection, no dates |
| 356 | ARAG legal premium billing and payment records from IBB | Collection, no dates |
| 357 | AXA equitable premium billing and payment records from IBB | Collection, no dates |
| 430 | Eligibility Summary – Boilermakers Union and Bank of Labor Plans | No date |
| 431 | Compilation of Benefit Contributions FY2017-2020 | Compilation |
| 432 | Enrollment Summary from Wilson McShane | No date |

32

**Tier 2 Violations**

| Ex. | Description (Verbatim from Doc. 244) | Deficiency |
|---|---|---|
| 436 | Special Assistants for Newton Jones | No date, no document type |

Doc. 244 at 1-15.

## V.    Tier 3 Violations: Exclude unless cured by March 19.

These are the Document 244 listings that constitute Tier 3 Violations. These entries identify actual documents, but still omit the production information needed to make the Government's list searchable and usable in real trial preparation. They violate the Court's pretrial framework and cause real prejudice—especially in light of the high error volume. The Court should therefore issue an order that excludes the Tier 3 entries unless the Government by March 19, 2026, supplies to Defendants both a production identifier and an actual copy of the exhibit.

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 3 | 2021 Boilermakers Union Constitution |
| 4 | Article 9.1 of the Boilermakers Union Constitution |
| 5 | Article 5.2 of Constitution |
| 8 | Newton Jones Appoints Bill Creeden as Chief of Staff April 2023 |
| 9 | Newton Jones Appoints Bill Creeden as Secretary-Treasurer Oct 2005 |
| 14a | Labor Management Report of Boilermakers Union (LM-2) 2023-24 |
| 14b | Labor Management Report of Boilermakers Union (LM-2) 2022-23 |
| 14c | Labor Management Dent Report of Boilermakers Union (LM-2) 2021-22 |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 14d | Labor Management Report of Boilermakers Union (LM-2) 2020-21 |
| 14e | Labor Management Report of Boilermakers Union (LM-2) 2019-20 |
| 14f | Labor Management Report of Boilermakers Union (LM-2) 2018-19 |
| 14g | Labor Management Report of Boilermakers Union (LM-2) 2017-18 |
| 14h | Labor Management Report of Boilermakers Union (LM-2) 2016-17 |
| 14i | Labor Management Report of Boilermakers Union (LM-2) 2015-16 |
| 14j | Labor Management Report of Boilermakers Union (LM-2) 2014-15 |
| 14k | Labor Management Report of Boilermakers Union (LM-2) 2013-14 |
| 14l | Labor Management Report of Boilermakers Union (LM-2) 2012-13 |
| 14m | Labor Management Report of Boilermakers Union (LM-2)2011-12 |
| 14n | Labor Management Report of Boilermakers Union (LM-2) 2010-11 |
| 14o | Labor Management Report of Boilermakers Union (LM-2) 2009-10 |
| 14p | Labor Management Report of Boilermakers Union (LM-2) 2008-09 |
| 14q | Labor Management Report of Boilermakers Union (LM-2) 2007-08 |
| 14r | Labor Management Report of Boilermakers Union (LM-2) 2005-06 |
| 14s | Labor Management Report of Boilermakers Union (LM-2) 2004-05 |
| 14t | Labor Management Report of Boilermakers Union (LM-2) 2003-04 |
| 14u | Labor Management Report of Boilermakers Union (LM-2) 2002-03 |
| 14v | Labor Management Report of Boilermakers Union (LM-2) 2001-02 |
| 14w | Labor Management Report of Boilermakers Union (LM-2) 2000-01 |
| 14x | Labor Management Report of Boilermakers Union (LM-2) 1999-00 |
| 16 | Bill Creeden Letter on intl expenses 2010 |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 17 | Newton Jones Letter on Fiduciary Responsibility (May 2015) |
| 18 | Newton Jones Letter on Fiscal Responsibility (April 2015) |
| 19 | International Policy on Local Expenditures (January 2015) |
| 21 | Bill Creeden on Expense Rules (2016) |
| 22 | Newton Jones Fiscal Responsibility Circular (July 2017) |
| 23 | Newton Jones-Bill Creeden Memo Re Expenses (February 2023) |
| 24 | Warren Fairley Memo Re Expenses (August 2022) |
| 25 | Bill Creeden--Boilermakers Union Process Likely Violates DOJ Regulations (August 2023) |
| 28 | Officers Report Pre-Convention 2006 |
| 29 | Officers Report Pre-Convention 2016 |
| 30 | Proposals for 2016 Convention |
| 31 | Excerpt from Proceedings of 2016 Convention (Resolutions on Article 4.7) |
| 32 | Excerpts From 2016 Convention Proceedings (Voting on 4.7 Resolutions) |
| 33 | Officers Report Pre-Convention 2021 |
| 33a | 2021 Convention Officers Report |
| 34 | 2021 Convention Proceedings |
| 39 | United States Grand Jury Subpoena (April 2022) |
| 40 | Blake and Uhlig Legal Memorandum on Expenditures in Boilermakers Union (April 2022) |
| 41 | Building Plans for New Boilermakers Union Headquarters (August 2023) |
| 42 | Whistleblower Letter (March 25, 2023) |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 43 | Article 17 Charges Against Newton Jones (April 14, 2023) |
| 44 | Newton Jones' Appointment of McManamon and Creeden to Alternative Committee (May 3, 2023) |
| 45 | Temporary Suspension of Newton Jones by IEC (May 12, 2023) |
| 46 | Bill Creeden and Lawrence McManamon Announcement of Alternative Committee (May 16, 2023) |
| 47 | John Fultz Letter (May 30, 2023) |
| 48 | Article 17 Hearing Transcript (May 30, 2023) |
| 49 | Decision of Executive Council Regarding Article 17 Charges Against Newton (June 1, 2023) |
| 50 | IEC Letter Complaining About Retaliation by Newton Jones (June 12, 2023) |
| 51 | Decision of Bill Creeden and Lawrence McManamon (June 14, 2023) |
| 52 | Tim Simmons Declaration and Exhibits (June 15, 2023) |
| 53 | Amy Wiser Writing Newton Jones Defense (June 5, 2023) |
| 54 | Warren Fairley Opinion on Newton Jones' Ukraine Trips (March 2022) |
| 61 | Warren Fairley Email Re Mandiant (August 8, 2023) |
| 62 | Wire of Kateryna Jones Backpay July 1, 2014—April 2015 (April 16, 2015) |
| 63 | Wire of Kateryna Jones Backpay July 1, 2014—April 2015 (April 17, 2015) |
| 64 | Wire of Backpay to Kateryna Jones July 2013-June 2014 (August 26, 2015) |
| 66 | Kateryna Jones Acceptance of Another Title February 2023 |
| 72 | Wide Awake Film Projects (2017) |
| 74 | Newton Jones to Cullen Jones (Dec 25, 2019) |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 75 | Termination of Cullen Jones (August 16, 2023) |
| 79 | Newton Jones Announcement of Reduction in pay (May 2020) |
| 82 | Email from Tyler Brown re Shae Jones and Derek Zurowski salaries (March 2021) |
| 83 | Email from Tyler Brown re Derek Zurowski salary increase (September 2021) |
| 86 | Boilermakers Union Relocation Policy |
| 89 | Boilermakers Union Employees Health Care Plan |
| 90 | Cullen Jones reenrollment November 2021 |
| 92b | Kathy Stapp email re Daly family coverage (June 4, 2018) |
| 93 | Letter re Boilermakers Union EHCP (Brian Daly) (July 5, 2024) |
| 95 | Brian Daly-Employment Forms & Insurance Letter O&E Letter (April 20, 2018) |
| 96 | Email re Brian Daly enrollment from Bill Creeden |
| 98 | Email re Daly continuation from Bill Creeden |
| 103 | Email from Bathory to Newton Jones Re Receipts for AMEX (Nov 2021) |
| 104 | Newton Jones Loews International Room Service (June 2023) |
| 108 | Minutes of IEC Meeting in Paris, France (June 2009) |
| 109 | Signed Statement of Work for Mandiant (April 18, 2023) |
| 110a | Newton Jones-Kateryna Jones Marriage License (August 2011) |
| 110b | Award of VISA for Kateryna Jones (January 2015) |
| 116 | Strategic Partnership Agreement with TSSA (Feb 2020) |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 117b | Gifts of Shinola Watches for Italian Hosts |
| 118 | Amy Wiser Write Up for Amalfi Trip (April 2022) |
| 121 | Boilermakers Union Conflict of Interest Policy |
| 122 | Boilermakers Union Premium Travel Policy |
| 123 | Boilermakers Union Policy on Spouse travel |
| 125 | Minutes of IEC Meeting in Copenhagen, Denmark (June 2012) |
| 128 | Boilermakers Union Vacation Policy 2012 |
| 129 | Boilermakers Union Vacation Policy Dec 2012 Max 2 weeks |
| 130 | Boilermakers Union Vacation Policy extension 2014 |
| 131 | IEC Meeting Minutes Re Vacation Policy (February 26, 2015) |
| 132 | Yearly Vacation Accruals 2016 |
| 133 | Boilermakers Union Vacation Policy 2015 |
| 134 | Newton Email on Vacation Policy to Tyler Brown (August 2016) |
| 143 | Kathy Stapp Affidavit in United States District Court Litigation |
| 144 | Bill Creeden Vacation—Iceland June 2023 |
| 145 | Bill Creeden Vacation—Bahamas March 2022 |
| 151 | Bill Creeden Vacation Bucket List 2023 |
| 153 | Newton Jones Capping Cash Payouts of Vacation Time 2012 |
| 154 | Newton Jones Vacation Email Dec 2012 |
| 155 | Bill Creeden Vacation Freeze Email (2015) |
| 156 | Bill Creeden Vacation Freeze Email (2020) |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 160 | Kathy Stapp Instructions to Goodwin re August 23 Cash Payouts for Vacations |
| 161 | Private Jet Proposal (Sept 20, 2022) |
| 162 | Bill Creeden Approval of Private Jet Package (Sept 21, 2022) |
| 163 | Magellan Jet, LLC Jet Card Ownership Agreement, (Sept. 22, 2022) |
| 164 | $6,800 trip for Shae on Private Jet (June 2017) |
| 165 | Private Jet Travel to Pheasant Hunt (Oct 2018) |
| 166 | Private Jet Use to Take Officers to Florida Meeting (March 2021) |
| 170 | February 21 2022, Minutes of IEC Meeting and Approval of Minutes |
| 171 | FDIC Report of Examination of Bank of Labor (2023) |
| 172a | formaunion.com – Ukrainian |
| 172b | formaunion.com – Russian |
| 172c | Form a union website Translation (May 2017) |
| 173 | Translation of Film Project (January 17, 2018) |
| 174 | Kate Jones Resignation (January 18, 2018) |
| 175 | Newton Jones: Kate Jones Works at Her Own Pace (January 18, 2018) |
| 176 | Kateryna Jones--Lost Computer in Italy (January 22, 2018) |
| 181 | Newton Jones--Bank of Labor Change of Control Agreement |
| 182 | Bill Creeden--Bank of Labor Change of Control Agreement |
| 183 | Bank of Labor Compensation Committee Agenda December 2022 |
| 191a | LM 30 Jones 2015 |
| 191b | LM 30 Jones 2016 |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
|---|---|
| 191c | LM 30 Jones 2017 |
| 191d | LM 30 Jones 2018 |
| 191e | LM 30 Jones 2020 |
| 192a | LM 30 Creeden 2013 |
| 192b | LM 30 Creeden 2014 |
| 192c | LM 30 Creeden 2015 |
| 192d | LM 30 Creeden 2016 |
| 192e | LM 30 Creeden 2017 |
| 192f | LM 30 Creeden 2018 |
| 192g | LM 30 Creeden 2019 |
| 192h | LM 30 Creeden 2020 |
| 192i | LM 30 Creeden 2021 |
| 194a | Bill Creeden email from Bank of Labor re life insurance (July 10, 2020) |
| 194b | Bank of Labor Supplemental Life Insurance Policies (Sept 2020) |
| 194e | Newton Jones email to Bank of Labor re retirement withdrawal (July 22, 2020) |
| 194f | Newton Jones and Bill Creeden email from Bank of Labor re execution of supplementary life insurance (September 3, 2020) |
| 194g | Creeden email to Bank of Labor with request for breakdown of salary and benefit information (October 27, 2021) |
| 194h | Creeden email from Bank of Labor requesting to execute deferral agreement for retirement plan (January 5, 2021) |
| 197 | Email confirmation of Bill Creeden distribution (February 7, 2022) |

40

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 202 | MORE Proposal March 2018 |
| 203 | Minutes of the IEC December 2017 |
| 205 | $5M Loan MORE Fund to Bank of Labor (Sept 2021) |
| 206 | Bank of Labor loan of add. $2M (Nov 2022) |
| 212 | Bill Creeden Appointment to Boilermakers Union Board of Trustees Jan 2006 |
| 224 | Tyler Brown Plea Agreement |
| 225 | Tyler Brown Plea Addendum |
| 226 | Kathy Stapp Plea Agreement |
| 227 | Kathy Stapp Plea Addendum |
| 228 | Warren Fairley--Cash Payout for Vacation (August 2018) |
| 233 | Email from N. Jones re living in Ukraine, July 2017 |
| 234 | Email from N. Jones re Bruno Magli Shopping |
| 235 | Email from N. Jones re Grammar book |
| 236 | Email from N. Jones re 2011 meeting in Paris |
| 237 | Email from N. Jones re Geneva purchase |
| 238 | Email from N. Jones re Kateryna personal email address |
| 239 | Email from N. Jones re Kateryna Boilermaker email address |
| 240 | Email from Albertson to McManamon re new bulletin (Feb. 2013) |
| 240a | Email from McManamon to Albertson re new bulletin (Feb. 2013) |
| 241 | Email from McManamon to Fairley re high rollers (March 2016) |

**Tier 3 Violations**

| Ex. | Description (Verbatim from Doc. 244) |
| --- | --- |
| 242 | Email from Creeden bcc McManamon re FLAEI congress itinerary (March 2022) |
| 243 | Email from Rose to McManamon re FLAEI congress itinerary (March 2022) |
| 244 | Email from Legacy re Internation Flights paid for by Union (Aug. 2023) |
| 245 | Legacy Spreadsheet Summary of International Travel (Aug. 2023) |
| 246 | Email from McManamon re KC Star (Feb. 2013) |
| 352a | 2019 Pension & Annuity plan contribution spreadsheet from IBB |
| 352b | 2020 Pension & Annuity plan contribution spreadsheet from IBB |
| 352c | 2021 Pension & Annuity plan contribution spreadsheet from IBB |
| 352d | 2022 Pension & Annuity plan contribution spreadsheet from IBB |
| 352e | 2023 Pension & Annuity plan contribution spreadsheet from IBB |

Doc. 244 at 1-15.

## Conclusion

For the foregoing reasons, Defendant William Creeden respectfully requests that the Court enter an order excluding the exhibits that correspond to the Government's Document 244 "Trial Exhibit List" as follows:

i.     Tier 1 Entries. The Court should issue an order that excludes all evidence corresponding to the Tier 1 exhibit entries.

ii.     Tier 2 Entries. The Court should issue an order that excludes all evidence corresponding to the Tier 2 entries unless the Government by March 19, 2026, supplies to Defendants for each exhibit at issue both a production identifier and an actual copy of the exhibit.

iii.     Tier 3 Entries. The Court should issue an order that excludes all evidence corresponding to the Tier 3 entries unless the Government by March 19, 2026, supplies to Defendants for each exhibit at issue both a production identifier and an actual copy of the exhibit.

The Court should grant any further relief that is just under the circumstances.

Respectfully submitted,

/s/ *Kurt Kerns*
Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tele: (713) 364-6640

Attorneys for William Creeden

## Certificate of Service

A true and correct copy of the foregoing document was served via the Court's

CM/ECF system to all registered counsel of record on the day of its filing.

/s/ Kurt Kerns
Kurt Kerns

44