UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),
CULLEN JONES (07),

    *Defendants*.

Case No. 2:24-cr-20070-DDC

**Defendant William Creeden's Motion to
Compel Disclosure of Exculpatory Evidence**

# Table of Contents

Summary of the Argument ..................................................................................3

Statement of Facts ..............................................................................................4

I.      The indictment asserts a fraudulent Bank of Labor scheme. ..................4

II.     FDIC examined the Bank of Labor and found no fraud. .........................5

III.    The Government refuses to supply FDIC records. ..................................6

Argument ............................................................................................................7

I.      The Court should order the Government to disclose the FDIC records. ................7

        A.      The FDIC records at issue ..........................................................7

        B.      *Brady* and *Kyles* require disclosure of the FDIC records. ..............................8

                1.      The FDIC records are material. ........................................9

                2.      The FDIC records are favorable. ....................................10

        C.      The Government cannot avoid *Brady* by disclaiming possession. ..............12

                1.      The prosecution-team doctrine applies. ...........................12

                2.      The government has constructive possession already. ...................13

                3.      The Government has a duty to inquire. ...........................15

                4.      Full disclosure is required. ............................................17

Conclusion .......................................................................................................18

Certificate of Service .......................................................................................20

Defendant William Creeden moves for an order compelling the government to disclose material exculpatory evidence of the Federal Deposit Insurance Corporation.

### Summary of the Argument

The Government is withholding known, favorable, and material FDIC records that go to the core of its Bank of Labor fraud theory. Federal regulators examined the same governance, compensation, and related-party practices at issue and did not identify wrongdoing. That evidence directly undermines the Government's theory and supports lawful intent. *Brady* requires its disclosure. Yet the Government refuses to supply it.

The Government's sole response—that it does not "possess" these records—fails. *Brady* reaches evidence held by agencies acting on the Government's behalf, evidence within the Government's constructive possession, and evidence it must obtain through reasonable inquiry. Each principle independently applies to the FDIC records at issue here. The Government has already accessed FDIC records and plans to use them at trial. It cannot cherry-pick the favorable portions and ignore the rest.

Nor can the Government avoid its obligation by declining to look. The FDIC examined the charged conduct and generated findings that conflict with the prosecution's theory. That triggers a duty to inquire and produce the complete record. Partial disclosure does not satisfy *Brady* where disclosed records already undercut the Government's case.

The requested relief seeks production of specific, known FDIC records covering the charged period and conduct. Because those records are favorable, material, and within the Government's reach under settled law, the Court should order their disclosure.

**Statement of Facts**

**I.    The indictment asserts a fraudulent Bank of Labor scheme.**

The indictment charges Defendants with RICO conspiracy (Count 1), embezzlement of union funds through loans to the Bank of Labor (Count 48), wire fraud conspiracy based on Jones's and Creeden's Bank employment (Count 53), and theft from ERISA programs tied to Bank of Labor retirement benefits (Counts 54–57). *See* Doc. 1.

Count 53 anchors the Bank of Labor theory. It alleges that Jones and Creeden falsely claimed to serve as full-time executives while performing no productive work yet received more than $3.4 million each in compensation and benefits over approximately thirteen years. Doc. 1 at 51–55. Counts 54 and 55 extend that theory, alleging they were ineligible for the Bank's ERISA-covered retirement plan because they were not bona fide employees. Doc. 1 at 56. Counts 56 and 57 allege inflated hours for pension benefits. Doc. 1 at 57. Count 48 alleges unauthorized $7 million loans from the Boilermakers Union to the Bank. Doc. 1 at 44. Count 1 incorporates all of this conduct as predicate acts. Doc. 1 at 11–26.

Each count depends on the same premise: that the Bank of Labor employment and compensation arrangement was unauthorized, fraudulent, or otherwise unlawful. The documents at issue bear directly on that premise.

## II.    FDIC examined the Bank of Labor and found no fraud.

In 2012, the Kansas City Star published a series of articles questioning the Boilermakers Union′s relationship with the Bank of Labor, including executive compensation and alleged conflicts of interest. These articles prompted multiple independent reviews leading to the FDIC activities at issue.

*Hunton & Williams Investigation***.** The Bank's Audit Committee retained Hunton & Williams LLP to investigate the Bank's practices and its relationship with the IBB and its officers. *See* Doc. 266 Ex. F. In November 2012, the firm reported that it found "no indications of impermissible conflicts of interests, insider abuse, extravagant expenses, or benefits that raise concerns as to the Board's fiduciary duties to its shareholders or indicate lack of compliance." *Id.* at 2. The report did not address executive compensation because that subject was already under review by an independent firm and by federal and state regulators. *Id.* That limitation identifies the relevant document universe: contemporaneous regulatory reviews of the very compensation theory charged in Count 53. Defendants do not possess the independent firm′s report.

*FDIC and OSBC Examinations.* The FDIC and OSBC examined the Bank during the relevant period, including its compensation practices, related-party transactions, and relationships with IBB officers. Those examinations did not identify the compensation arrangements now charged as criminal fraud. *See* Doc. 266 Ex. F at 2.

5

### III.    The Government refuses to supply FDIC records.

On March 10, 2026, counsel for Defendant Creeden sent a letter to the government demanding production of the following categories of documents:

1.  The Hunton & Williams investigation report and related materials;

2.  The independent executive compensation review;

3.  FDIC examination reports and records concerning the Bank of Labor's relationship with IBB officers (2009–2023);

4.  OSBC examination reports for the same subjects and periods;

5.  Bank of Labor Audit Committee and Compensation Committee records (2009–2023); and

6.  Communications between the prosecution team—including the FBI, OLMS, FDIC, and OSBC—regarding executive compensation at the Bank of Labor.

*See* Ex. A (March 10, 2026 demand letter).

On March 11, 2026, the government responded categorically. Ex. B at 1-2. As to each category, the government disclaimed possession and denied any obligation to obtain the documents. *Id.* As to the FDIC and OSBC, the government asserted that neither agency "is part of the prosecution team" and that the government has "no obligation to request records" from them. *Id.* The government further asserted there was "no joint investigation" with either agency, that neither "played an active role in this prosecution," and that the government does "not have access to" their records. *Id.*

**Argument**

**I.    The Court should order the Government to disclose the FDIC records.**

The FDIC records are favorable, material, and within the government's reach. The government's sole defense — that it does not "possess" the records — fails under three independent doctrines. The Court should order disclosure.

**A.    The FDIC records at issue**

To avoid any ambiguity about the scope of the requested disclosure, Defendant identifies the following categories of FDIC-held records that the government must obtain and produce:

*(a)*    All FDIC Reports of Examination for the Bank of Labor for examination cycles during the period 2009 through 2023 (not solely the excerpts already produced bearing the "FDIC-BOL-ROE" Bates prefix);

*(b)*    All FDIC examination work papers concerning the Bank of Labor for the same period, including records bearing or related to the "FDIC-BOL-EXW" Bates prefix already appearing in discovery and on the government's trial exhibit list (Doc. 264);

*(c)*    All FDIC supervisory correspondence directed to or received from the Bank of Labor during the same period, including letters, memoranda, and reports related to governance, executive compensation, related-party transactions, and the Bank's relationship with the International Brotherhood of Boilermakers;

7

*(d)*    All FDIC internal memoranda, analyses, or findings concerning executive compensation, officer employment, or related-party transactions at the Bank of Labor during the same period; and

*(e)*    All communications between the FDIC and any member of the prosecution team—including the FBI, OLMS, and the United States Attorney's Office—concerning the Bank of Labor, its officers, or the conduct charged in the indictment.

These are known, existing records. The government's trial exhibit list identifies specific FDIC records by Bates number that it intends to introduce at trial. *See, e.g.*, Doc. 264 at 11–12 (listing as Government Exhibit 171 the FDIC Report of Examination (2023)). The request is targeted, not exploratory.

### B.    *Brady* and *Kyles* require disclosure of the FDIC records.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), requires the prosecution to disclose favorable evidence material to guilt or punishment. The obligation extends to impeachment evidence, *Giglio v. United States*, 405 U.S. 150, 154 (1972), and applies regardless of a defense request, *Kyles v. Whitley*, 514 U.S. 419, 432–34 (1995). Evidence is material when its suppression would "undermine confidence" in the outcome. *Id.* The undisclosed FDIC records meet that standard.

### 1.    The FDIC records are material.

The FDIC records are material because they go to the central premise of every Bank of Labor count. Federal banking regulators repeatedly examined the Bank during the charged period, reviewed its governance structure and compensation practices, and did not identify fraud, insider abuse, or regulatory violations. *See* Ex. C (FDIC Report of Examination of Bank of Labor (2016)); Ex. D (FDIC Report of Examination of Bank of Labor (2020); Ex. E. FDIC Report of Examination of Bank of Labor (2023)). Evidence that the Bank's federal regulator evaluated the same conduct and did not condemn it would place the government's theory of fraud in a very different light.

First, the FDIC records go to the heart of Count 53. That count alleges that Jones and Creeden devised a scheme to defraud the Bank of Labor through a sham employment arrangement. Doc. 1 at 51–55. But the FDIC repeatedly rated the Bank′s management as sound and described its relationship with the Boilermakers Union as a ″source of strength.″ Ex. C at 8 [FDIC-BOL-ROE-0000008] (FDIC Report of Examination of Bank of Labor (2016)); Ex. D at 9 [FDIC-BOL-ROE-0000050] (FDIC Report of Examination of Bank of Labor (2020)); Ex. E at 6 [FDIC-BOL-ROE-0000089] (FDIC Report of Examination of Bank of Labor (2023)). Ex. C at 8; Ex. D at 9; Ex. E at 6. That directly undermines the government′s proof of falsity and intent on the sham-employment theory.

Second, they are material to Counts 54 and 55, which depend on the premise that Jones and Creeden were not bona fide Bank employees and were therefore ineligible to participate in the Bank of Labor retirement plan. Doc. 1 at 56. FDIC examination reports

reflecting regulator awareness of the Bank's management structure and compensation practices—and the absence of any finding that their employment status was improper—directly undercut that eligibility theory.

Third, the records bear on Count 48. That Count 48 alleges unauthorized loans from the Union to the Bank. Doc. 1 at 44. But the FDIC characterized the Bank's relationship with the Union as beneficial to the institution. Ex. C at 8 [FDIC-BOL-ROE-0000008]; Ex. D at 9 [FDIC-BOL-ROE-0000050]; Ex. E at 6 [FDIC-BOL-ROE-0000089]. Evidence that regulators viewed the relationship as a source of strength undermines the suggestion that those transactions were inherently improper.

Finally, the records are material to Count 1. The RICO charge incorporates the Bank of Labor allegations as predicate conduct. Doc. 1 at 11–26. Evidence undermining the premise that the Bank of Labor arrangement was fraudulent necessarily weakens the government's effort to treat that conduct as racketeering activity.

### 2. The FDIC records are favorable.

The FDIC records are favorable because they directly contradict the government's fraud theory. The FDIC examined the Bank of Labor during the charged period and did not identify fraud, insider abuse, or regulatory violations in the arrangements the indictment now characterizes as criminal. That is not neutral silence. It is an affirmative finding by the responsible federal regulator that the same conduct was consistent with safe and sound banking practice.

10

The exculpatory force is straightforward: a defendant does not act with fraudulent intent when operating under a regime repeatedly examined and not condemned by its federal regulator. The impeachment force is equally direct: any government witness who characterizes the arrangement as facially improper can be confronted with the FDIC's contrary assessment. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The FDIC records do not merely "relate" to the charged conduct. They cut directly against it. That is favorability under *Brady*.

The government may argue that FDIC safety-and-soundness examinations do not assess criminal liability and therefore cannot yield *Brady* material. But *Brady* favorability does not require the exculpatory source to apply the same legal standard as the charge. Evidence is favorable if it tends to negate guilt or undermine the prosecution's theory. *See Brady*, 373 U.S. at 87. Here, the government must prove that the Bank of Labor arrangement was a *sham* — an obvious fraud designed to extract money under false pretenses. Evidence that trained federal regulators with statutory authority over the institution examined the same governance, compensation, and related-party practices and found them consistent with safe and sound banking practice directly negates that premise. It bears on intent, good faith, and the objective reasonableness of the defendants' conduct. That is *Brady* material regardless of whether the FDIC applied a criminal-law label.

11

### C.     The Government cannot avoid *Brady* by disclaiming possession.

The government says it does not "possess" the FDIC records and owes nothing more. That position fails under each of the three doctrines that follow.

### 1.     The prosecution-team doctrine applies.

First, *Brady* obligations reach the FDIC records at issue because FDIC is part of the investigative apparatus behind this case. The Government cannot prosecute Bank of Labor conduct while treating the federal regulator that examined that conduct as a stranger.

Supreme Court precedent makes *Brady* extend beyond the prosecutor's file to evidence known to "others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). The Tenth Circuit applies the same rule to "law enforcement personnel and other arms of the state involved in investigative aspects of the case." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995); *see also United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (prosecution team includes agencies "closely aligned with the prosecution").

The FDIC fits that description of the rule's reach. It exercised statutory authority to examine the Bank of Labor, reviewed the same governance and compensation practices now charged, and generated the primary regulatory record of that conduct. When the Government builds a fraud case on that same conduct, the agency that examined it is necessarily part of the investigative landscape *Brady* covers. The existing production here—bearing "FDIC-BOL-ROE" Bates prefixes—confirms that prosecutors already

accessed and used FDIC examination records. That use establishes functional alignment with the prosecution and brings the FDIC within the Brady disclosure framework.

Formal labels do not control. Brady does not ask whether an FDIC employee sat at counsel table or joined a formal task force. It asks whether the Government relied on another arm of government that examined the charged conduct and could supply relevant evidence. Once the prosecution chose to criminalize Bank of Labor governance, compensation, and related dealings, it could not treat the agencies assigned to examine those subjects as outsiders.

### 2.      The government has constructive possession already.

Second, *Brady* obligations reach the FDIC records at issue because the Government has constructive possession of them. The government knows they exist, has accessed them, and can obtain them with ease. Having gotten at least the tip of the iceberg already, *Brady* does not permit the Government to stop at partial acquisition and ignore the remainder. The government's own discovery production includes FDIC Reports of Examination bearing the "FDIC-BOL-ROE" Bates prefix. And the government's trial exhibit list, filed twelve days after the denial letter, identifies FDIC records—including examination work papers bearing the "FDIC-BOL-EXW" prefix—that the government affirmatively plans to introduce as evidence. *See* Doc. 264 at 11–12. *Brady* does not permit partial acquisition followed by willful blindness to the remainder.

Constructive possession arises when the prosecution has "knowledge of and access to" the evidence. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). It includes a duty to search likely sources of exculpatory information. *See United States v. Brooks*, 966 F.2d 1500, 1502 (D.C. Cir. 1992). Both elements are satisfied here.

The record confirms that FDIC examination records exist and address the charged conduct. The Hunton & Williams report states that federal regulators examined executive compensation and related governance at the Bank of Labor. And the Government's own production includes FDIC examination reports bearing the "FDIC-BOL-ROE" Bates prefix. Those documents establish knowledge and partial access.

The government's access goes beyond the produced reports. Its trial exhibit list — filed twelve days after its denial letter — identifies FDIC examination work papers the government intends to introduce at trial. *See* Doc. 264 at 11–12 (Exhibit 171 [FDIC Report of Examination (2023), FDIC-BOL-ROE-0000084]; Exhibit 180 [BOL Board Minutes, FDIC-BOL-EXW-0001770]; Exhibits 181–82 [Change of Control Agreements, FDIC-BOL-EXW-0002471, FDIC-BOL-EXW-0002463]). The government cannot tell the defense it "does not have access to the FDIC's records," Exhibit B at 1, while simultaneously listing those records on its own exhibit list.

The Government's position reduces to a choice *not to look*. But willful blindness does not defeat *Brady*. When the prosecution knows that a body of relevant evidence exists and can obtain it through routine inquiry, the law treats that evidence as constructively

14

possessed. *Kyles*, 514 U.S. at 437–38. The FDIC records meet that standard: known, relevant, and readily obtainable.

Provenance does not matter. Even if the produced reports came through Bank or union files, they prove the Government knows the FDIC records exist and are relevant. The partial production is not a limit; it is the predicate for constructive possession.

The FDIC's confidentiality regulations, 12 C.F.R. Part 309, do not excuse the government's refusal either. Federal courts have consistently held that statutory and regulatory privileges—including the bank-examination privilege—must yield when a criminal defendant's due process rights are at stake. *See, e.g.*, *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) (bank-examination privilege is qualified, not absolute). If the FDIC asserts confidentiality, the proper remedy is a protective order governing the use and handling of examination records—not suppression of constitutional *Brady* evidence.

### 3.    The Government has a duty to inquire.

Third, *Brady* obligations reach the FDIC records at issue because, even if the Government lacked possession, *Brady* required it to look. Once the prosecution knew the FDIC had examined the charged conduct and held relevant records, it had an affirmative duty to seek them.

The operative duty is active, not passive. It requires the government to make reasonable inquiries of agencies and individuals who may possess material evidence. So the correct rule followed nationally is that prosecutors must diligently inquire into the files of

agencies "closely aligned with the prosecution." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). That rule applies here.

The D.C. Circuit's *Brooks* decision is the leading case representing the national rule. "In extending the *Brady* duty to searches for evidence, the 5th Circuit framed the matter as one of incentives for the government, arguing that without the extension 'we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government.'" *Id.* (quoting *United States v. Auten*, 632 F.2d 478, 481 (5th Cir.1980)). "The 7th Circuit has sounded a similar note, warning that 'a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case.'" *Id.* (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)). "The 3rd Circuit, while following the 5th Circuit's *Auten* decision, did not refer to incentives directly, although its observation that the U.S. Attorney's failure to check an obvious database for a key witness's criminal conviction 'amounted to conduct unworthy of the United States Attorney's Office', *United States v. Perdomo*, 929 F.2d 967, 970–71 (3rd Cir.1991), may rest on the same judgment." *Id.*

"Pure speculation" of exculpatory evidence is not enough to trigger the duty. *See Brooks*, 966 F.2d at 1503-04. But as this Court has long recognized under *Brooks*, the duty to inquire quite rightly exists when there is some "reasonable prospect" of finding exculpatory evidence. *United States v. Cooper*, 283 F. Supp. 2d 1215, 1238 n.2 (D. Kan. 2003); *United States v. Hernandez*, No. 98-40079-01-SAC, 1999 WL 318090, at *7 (D. Kan. Feb. 23, 1999); *United States v. Hernandez*, No. 98-40079-01-SAC, 1999 WL 318090, at *7

(D. Kan. Feb. 23, 1999); *United States v. Johnson*, No. 96-40082-02-SAC, 1997 WL 447681, at *3 (D. Kan. June 9, 1997); *United States v. Ruedlinger*, No. 96-40045-SAC, 1996 WL 699686, at *5 (D. Kan. Oct. 29, 1996); *United States v. Davenport*, No. 96-40019-02-SAC, 1996 WL 509632, at *3 (D. Kan. Aug. 12, 1996); *United States v. Preston*, No. 95-40083-01-SAC, 1996 WL 254379, at *14 (D. Kan. Apr. 5, 1996); *United States v. Goble*, No. 95-20051-01-EEO, 1995 WL 646822, at *2 (D. Kan. Oct. 11, 1995); *United States v. Ailsworth*, No. 94-40017-01-SAC, 1994 WL 539347, at *18 (D. Kan. Aug. 24, 1994); *United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994); *United States v. Marker*, No. 94-40002-01-SAC, 1994 WL 192018, at *4 (D. Kan. Apr. 15, 1994).

This case surpasses the *Brooks* threshold. The Hunton report confirms the FDIC examined the charged conduct. *See* Doc. 266 Ex. F at 2. The government's production includes FDIC examination reports. *See* Exs. D-F. And those reports reach conclusions inconsistent with the fraud theory. That is not speculation. It is documented, produced, and exculpatory — precisely what triggers a duty to obtain the complete record.

### 4.     Full disclosure is required.

The government cannot rely on the partial regulatory record already produced to avoid its Brady obligations. The existing production—four FDIC examination reports spanning a fourteen-year charged period—demonstrates why additional disclosure is required. A fragmentary production does not satisfy Brady when the government knows a larger body of closely related records exists and bears directly on the charged conduct. *See Kyles*, 514 U.S. at 437 (materiality assessed by the proof's "cumulative effect").

17

The reports already produced — rating management as sound, characterizing the IBB relationship as a source of institutional strength, and identifying no insider abuse or regulatory violations — are the best evidence that the broader file contains additional favorable material. If partial production already undermines the government's theory, the remainder necessarily carries at least the same exculpatory force. *Brady* does not permit the government to disclose a narrow slice while withholding the rest. *See Kyles*, 514 U.S. at 437.

## Conclusion

Defendant William Creeden respectfully requests that the Court enter an order compelling the government to obtain from the FDIC and disclose to the defense the records identified in Part I.A of this motion: all FDIC Reports of Examination for the Bank of Labor (2009–2023); all FDIC examination work papers for the same period; all FDIC supervisory correspondence concerning governance, executive compensation, related-party transactions, and the Bank's relationship with the IBB; all FDIC internal memoranda, analyses, or findings on those subjects; and all communications between the FDIC and any member of the prosecution team concerning the Bank of Labor or the charged conduct.

18

Respectfully submitted,

/s/ *Andino Reynal*
Federico Andino Reynal [*pro hac vice*]
The Reynal Law Firm P.C.
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us

Kurt P. Kerns #15028
Kerns Law Group
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Chad Flores [*pro hac vice*]
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tele: (713) 364-6640
chad@chadflores.law

Attorneys for William Creeden

## Certificate of Service

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all registered counsel of record on the day of its filing.

/s/ Kurt Kerns
Kurt Kerns