IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

**Defendants.**

Case No. 24-20070-DDC

## <u>MEMORANDUM AND ORDER</u>

Defendant William Creeden asks the court to compel the government to secure and then

disclose records from the Federal Deposit Insurance Corporation (FDIC).  Doc. 284.  Creeden

contends these records are favorable and material to his defense, going "to the core" of the

government's charges referencing the Bank of Labor.  *Id.* at 3.  He explains that the FDIC

examined the Bank of Labor during the Indictment period.  *Id.* at 5.  In those examinations,

Creeden continues, the FDIC never identified any issues with the compensation arrangements

that undergird the government's Bank of Labor charges.[1]  *Id.*  So, *Brady* requires disclosure, he

concludes.  *Id.* at 3; *see Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the

prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

---

[1]    Creeden identifies the implicated Bank of Labor charges to include:  Count 48 (Embezzlement from a Labor Organization and Unauthorized Loans under 29 U.S.C. § 501(c)); Count 53 (Wire Fraud Conspiracy under 18 U.S.C. §§ 1343, 1349); Counts 54, 55, 56, & 57 (Theft from an ERISA Program and Retirement Benefits for Ineligible Individuals under 18 U.S.C. § 664); and Count 1 (RICO Conspiracy under 18 U.S.C. § 1962(d))—which incorporates all of the preceding conduct.  Doc. 284 at 4; *see also* Doc. 1 at 11–26, 44, 51–55, 56–57 (Indictment).

the prosecution.").  But, when Creeden demanded production from the government, it refused. Doc. 284 at 6.

The government told Creeden that it didn't possess any additional FDIC reports—outside those it already had provided in discovery.  Doc. 284-2 at 1 (Def. Ex. B) (government's response to Creeden's demand letter).  And it denied any obligation to secure them for a number of reasons—the FDIC:  isn't part of the prosecution team; didn't participate in a joint investigation; never played an active role in the prosecution; has no member assisting with the prosecution; and hasn't instituted parallel proceedings.  *Id.*  The government asserted the same position when it responded to Creeden's Motion to Compel (Doc. 284)—it doesn't possess the requested documents and has no duty to acquire them.  Doc. 299 at 4–6.  The government explained that the FDIC had performed "solely civil and administrative functions" when creating the reports and had "played no role in the government's criminal investigation."  *Id.* at 5.  So, the government argues, the court should deny Creeden's motion.

Start with Creeden's legal hook for the documents:  *Brady*.  "The essence of the *Brady* rule is the proposition that nondisclosure of material exculpatory evidence violates a defendant's due process right to a fair trial."  *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995).  "*Brady* acknowledges 'that the prosecutor's role transcends that of an adversary' because the prosecutor, acting as the representative of the sovereign, has an obligation to ensure 'not that it shall win a case, but that justice shall be done.'"  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 675 n.6 (1985)).  The government commits a *Brady* violation when it withholds evidence that is favorable to a defendant and "the evidence is material either to guilt or to punishment[.]"  *Brady*, 373 U.S. at 87.  "Evidence favorable to the defense encompasses exculpatory evidence, which tends to establish a criminal defendant's innocence.  It also

2

encompasses impeachment evidence, used to undermine a witness's credibility, for 'if disclosed and used effectively,' such evidence 'may make the difference between conviction and acquittal.'" *Fontenot v. Crow*, 4 F.4th 982, 1066–67 (10th Cir. 2021) (quotation cleaned up) (quoting *Bagley*, 473 U.S. at 676). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Browning v. Trammell*, 717 F.3d 1092, 1094 (10th Cir. 2013) (quotation cleaned up).

*Brady* imposes an obligation beyond the prosecutors themselves. "[F]or *Brady* purposes—the 'prosecution' includes 'not only the individual prosecutor handling the case, but also . . . the prosecutor's entire office, as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture.'" *McCormick v. Parker*, 821 F.3d 1240, 1247 (10th Cir. 2016) (quoting *Smith*, 50 F.3d at 824). The Supreme Court has held that an "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Here, the parties don't dispute whether the at-issue FDIC records are favorable or material. Instead, they argue about the prosecution's possession and duty to search. Start with Creeden's possession arguments: He contends, *first*, that the FDIC is part of the prosecution team because it "reviewed the same governance and compensation practices now charged, and generated the primary regulatory record of that conduct." Doc. 284 at 12. So, Creeden asserts what he calls the "prosecution-team doctrine." Creeden reasons that given this doctrine, the prosecution possesses the requested records. *Id. Second*, he argues that the government has constructive possession of the FDIC records at issue because the government has knowledge of and access to the evidence, as demonstrated by their evidentiary production and trial exhibit list.

3

*Id.* at 13–14. *Finally*, consider Creeden's duty-to-search argument: He contends that "even if the Government lack[s] possession, *Brady* required it to look." *Id.* at 15. He premises this duty-to-search argument on *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). *Id.* at 16. *Brooks*, he argues, requires prosecutors to "diligently inquire into the files of agencies 'closely aligned with the prosecution.'" *Id.* at 15–16 (quoting *Brooks*, 966 F.2d at 1503). In short, Creeden asserts three motion-to-compel theories. The first two—the prosecution-team theory and the constructive-possession theory—he premises on the government's purported possession of the requested files. The third theory—under *Brooks*—argues that the government has a duty to search for the requested documents and then disclose them.

In response, the government reports that it already has "delivered all the records in its possession from the FDIC to defendants in discovery." Doc. 299 at 4. And the government represents that it doesn't possess the files Creeden now seeks. *Id.* Nor, the government argues, do they have a duty to secure them. *Id.* at 5. They are relieved of that duty, it contends, because the FDIC wasn't closely aligned with the prosecution in this case. Instead, the government asserts, the FDIC "performed solely civil and administrative functions" thus playing "no role in the government's criminal investigation." *Id.*

The way the government describes the FDIC's involvement in this case is dispositive of all three of Creeden's motion-to-compel theories. Here's why. The government asserts that the FDIC neither investigated this criminal case nor engaged with or aided the prosecution. And all three purportedly independent doctrines in Creeden's motion apply only when the federal agency at issue has worked in tandem with the prosecutor in some fashion—by investigating the case, aligning itself with the prosecution, or otherwise acting on the government's behalf, as explained next.

4

Start with the prosecution-team theory. *McCormick* makes clear that the prosecution team may extend to include other arms of the state, but only where those arms were "involved in investigative aspects of a particular criminal venture." 821 F.3d at 1247 (emphasis added).

Next take constructive possession. The cases Creeden cites to assert his constructive-possession theory impose a similar agency-involvement requirement. *First*, Creeden invokes *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989). Doc. 284 at 14. He argues that under *Bryan* "[c]onstructive possession arises when the prosecution has 'knowledge of and access to' the evidence." *Id.* (quoting 868 F.2d at 1036). But a more fulsome quotation from *Bryan* reveals that constructive possession—like the prosecution-team theory—imposes a threshold requirement of agency involvement in the same investigation.

> [T]he scope of the government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case. The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency *participating in the same investigation of the defendant.*

*Bryan*, 868 F.2d at 1036 (emphasis added) (quotation cleaned up). Later in his argument, Creeden cites *Kyles* for the proposition that when "the prosecution knows that a body of relevant evidence exists and can obtain it through routine inquiry, the law treats that evidence as constructively possessed." Doc. 284 at 15. But *Kyles*, too, imposes an agency-involvement requirement, this time using the phrase "the others acting on the government's behalf in the case[.]" *See* 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").[2]

---

[2]     Creeden also cites *United States v. Brooks*, 966 F.2d 1500, when arguing for constructive possession. Doc. 284 at 14. The court doesn't explore the agency-involvement requirement in *Brooks* under the constructive-possession theory, however. That's because the court takes up *Brooks* when discussing Creeden's third theory—a duty to search—in the next paragraph.

*Finally*, consider Creeden's duty-to-search theory.  He leans heavily into *Brooks*, contending that *Brooks* "is the leading case representing the national rule" that prosecutors have a duty to inquire.  Doc. 284 at 16.  But *Brooks* also qualifies this duty with an agency-involvement requirement.  966 F.2d at 1503 ("The cases finding a duty to search have involved files maintained by branches of government *closely aligned with the prosecution*[.]" (emphasis added) (quotation cleaned up)).  Indeed, *Brooks* explained that the "close working relationship" between the police department and the U.S. Attorney—a relationship that was "obviously at work in [the *Brooks*] prosecution"—triggered the duty to search.  *Id.*  Courts in our Circuit concur.  *See United States v. Ortiz-Ortiz*, No. 22-cr-1975 JCH, 2023 WL 5401122, at *3 (D.N.M. Aug. 22, 2023) ("*Brady* is nonetheless interpreted broadly to encourage prosecutors to carry out their duty to learn of favorable evidence known to *others acting on the government's behalf in the case*, including the police." (emphasis added)); *id.* ("[T]he government has no affirmative duty under *Brady* to seek out information that is not *in its or its agents' possession*[.]").

In sum, all three of Creeden's motion-to-compel theories require a threshold level of involvement by the agency at issue—here, the FDIC.  So, all three theories fail if Creeden can't demonstrate the requisite FDIC involvement with the investigation or prosecution of this case. The Tenth Circuit has provided a helpful guide for assessing the requisite involvement in *McCormick*.

There, McCormick asserted that he was entitled to habeas relief after a jury found him guilty of child sexual abuse and child abuse.  *McCormick*, 821 F.3d at 1246.  He contended that the prosecution had violated *Brady* by failing to disclose a key prosecution witness's lack of certification—that of the sexual assault nurse examiner (SANE nurse).  *Id.* at 1242.  The SANE nurse had provided the only independent evidence at trial to corroborate the child-victim's sexual

assault allegations.  *Id.* at 1244.  And it later came to light that her testimony, *i.e.*, that she was certified in Texas as a SANE nurse, was false.  *Id.*  To evaluate the alleged *Brady* violation, our Circuit considered whether the SANE nurse was part of the prosecution team such that the Circuit could impute her own knowledge of her uncertified status to the prosecution.  The Circuit concluded that she was a member of the prosecution team because the SANE nurse had "examined [the child-victim] at the behest of law enforcement as part of a criminal investigation into [the child-victim's] allegation that McCormick sexually abused her."  *Id.* at 1247 (quotation cleaned up).  And, the Circuit noted, the SANE nurse "explicitly testified that she kept a record of the exam to prepare herself to testify later."  *Id.*  In finding the nurse a part of the prosecution team, the Circuit emphasized that "she acted at the request of law enforcement in the pre-arrest investigation of a crime."  *Id.* at 1248.

Here, the FDIC played no such criminal investigative role in the charges that are related to the Bank of Labor.  The government explains that the FDIC documents that Creeden seeks flowed from the FDIC's Division of Risk Management Supervision (FDIC-RMS).  Doc. 299 at 3.  According to the government's Response, the FDIC-RMS "is responsible, in part, for examining and recommending courses of action for FDIC-insured banks."  *Id.*  It examined the Bank of Labor solely in that risk-management capacity—not as part of a criminal investigation or at the behest of law enforcement.  *Id.*  In other words, the FDIC-RMS didn't investigate a crime, as the SANE nurse had in *McCormick*.  Nor did it play any other role in the government's criminal investigation, the government reports.  *Id.*  Instead, the government explains, "the FDIC-RMS performed solely civil and administrative functions."  *Id.* at 5.  No joint investigation or parallel proceedings involved the FDIC in the prosecution's work here.  *Id.*  And no member of the FDIC assisted with the prosecution of this case.  *Id.*

Defendant Creeden's Reply never contests the government's representations about the level and nature of FDIC's involvement in this case. *See generally* Doc. 307. Instead, he contends the government never cites *Brooks* and never addresses his independent duty-to-inquire theory. *Id.* at 7. And he argues that *Brooks*, unlike the prosecution-team doctrine, establishes "a freestanding obligation" not tied to "institutional labels." *Id.* (quotation cleaned up). But that's not right. The court already has recited how *Brooks* similarly requires an agency's close alignment with the prosecution to trigger a duty to search. The absence of such an alignment is dispositive here. Besides, the government's Response quotes a case that quotes *Brooks*—so its seeming unresponsiveness is a matter of form, not substance. *See* Doc. 299 at 5 ("To this end, '[a] prosecutor may have a duty to search files maintained by other "governmental agencies *closely aligned with the prosecution*[.]"'" (emphasis in original) (quoting *United States v. Burton*, 81 F. Supp. 3d 1229, 1249 (D.N.M. 2015) (quoting *United States v. Padilla*, No. CR 09-3598 JB, 2011 WL 1103876, at *7 (D.N.M. 2011) (quoting *Brooks*, 966 F.2d at 1503)))).

The court concludes that defendant Creeden has failed to demonstrate that FDIC involved itself "in investigative aspects of [this] particular criminal venture," *McCormick*, 821 F.3d at 1247, or "participat[ed] in the same investigation of the defendant[.]" *Bryan*, 868 F.2d at 1036. Similarly, he hasn't demonstrated that the FDIC "act[ed] on the government's behalf in the case," *Kyles*, 514 U.S. at 437, or "closely aligned with the prosecution," *Brooks*, 966 F.2d at 1503 (quotation cleaned up). Without such showing, all three of defendant Creeden's motion-to-compel theories fail.

And this result makes sense. To require the prosecution to search and disclose records of another federal agency without imposing an agency-involvement requirement would hinder criminal prosecutions significantly. *See United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir.

1999) ("'[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis.'" (quoting *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998))).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant William Creeden's Motion to Compel (Doc. 284) is denied.

**IT IS SO ORDERED.**

**Dated this 1st day of May, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

9