UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

    *Defendants*.

Case No. 2:24-cr-20070-DDC

**Defendant William Creeden's Rule 29(a) Brief on Count 1**

**Table of Contents**

Argument: Count 1 Fails ............................................................................. 3

I.      No "enterprise": IBB personnel as such are not RICO racketeers. ....................... 4

    A.      IBB personnel acting in that capacity are not an "enterprise." .................... 4

    B.      Proof showed only IBB personnel acting in that capacity. ........................... 5

        1.      All titles and authority were IBB's. ................................................... 5

        2.      All approval channels were IBB's. ..................................................... 6

        3.      All financial infrastructure was IBB's. ............................................... 7

        4.      All business objectives were IBB's. ................................................... 8

    C.      The IBB conflation is fatal. ........................................................... 9

II.     No conspiracy: The hub and spokes have no rim. ................................................. 10

    A.      Conspiracy requires a unifying "rim." ....................................................... 10

    B.      Proof showed no rim. ...............................................................................11

Conclusion ..................................................................................................... 12

Defendant William Creeden has moved generally pursuant to Rule 29(a) for a judgment of acquittal as to all counts on all grounds. Doc. 406. Mr. Creeden maintains that motion in full without reservation, seeking a judgment of acquittal as to all counts on all grounds. In addition to and without waiving, forfeiting, or otherwise compromising any aspect of that general motion, Mr. Creeden submits that a judgment of acquittal is warranted for the additional reasons given by this brief regarding Count 1.

### Argument: Count 1 Fails

Count 1 fails because the government proved the IBB, not a RICO "enterprise." The indictment charged a "Jones Enterprise." But the proof showed only IBB personnel using IBB titles, authority, approval channels, accounts, policies, and business objectives. That proof fails under *Board of County Commissioners of San Juan County v. Liberty Group*, 965 F.2d 879 (10th Cir. 1992), which holds that officers and employees acting in the ordinary course do not form an association-in-fact separate from the organization itself. *Id.* at 886. The government showed union machinery, not a separate RICO "enterprise."

Count 1 also fails because the spokes have no rim. The proof fleshed out multiple separate Newton Jones-centered allegations: family benefits, vacation payouts, forensic surveillance, and Bank of Labor issues. Yet only the Bank of Labor spoke involved Mr. Creeden with any directness. *Tronsgard v. FBL Financial Group, Inc.*, 312 F. Supp. 3d 982 (D. Kan. 2018), rightly rejects such a rimless-wheel conspiracy on well-established grounds. Official proximity to Newton Jones is not agreement to a RICO enterprise, and the record is totally bereft of any real agreement evidence beyond that proximity.

## I.      No "enterprise": IBB personnel as such are not RICO racketeers.

Count 1 alleges a conspiracy to violate RICO's main proscriptions, 18 U.S.C. § 1962 (a)-(c). Doc. 1 at 11–27. One way or another, that requires proof of a RICO "enterprise" within the meaning of § 1961. If the theory posits a *completed* conspiracy, then of course the government must prove a resulting "enterprise"; and if the theory posits an *inchoate* conspiracy, the government must still prove that a RICO "enterprise" would have existed if the conspiracy had succeeded. *See, e.g.*, *Salinas v. United States*, 522 U.S. 52, 65 (1997).[1] Without some kind of proven "enterprise"—be it actual or attempted—Count 1 lacks a necessary element.

### A.      IBB personnel acting in that capacity are not an "enterprise."

The government failed to prove Count 1's "enterprise" element because its evidence showed only the IBB conducting IBB business through IBB personnel acting in that capacity, which as a matter of law cannot constitute a RICO "enterprise." Proof distinguishing the alleged "Jones Enterprise" from the IBB was required, and there is none.

---

[1] The government no longer pursues the inchoate theory. It used that theory only long enough to evade dismissal (barely). At trial the government dropped the inchoate theory. No proof showed an unfinished conspiracy that fell short of its aims. The government instead went all in on a completed conspiracy. It proved only what allegedly happened for years through actual IBB offices, actual approvals, actual expenses, and actual IBB systems.

Setting aside the potential variance problem, that record of completed intentions must support either an existing RICO enterprise or an agreement to create or conduct one. But it cannot support either. The facts that fail to prove an actual RICO "enterprise" also fail to prove an attempted one. If what actually happened created no RICO enterprise, the hypothetical version of what supposedly remained undone could not do so either.

*Board of County Commissioners of San Juan County v. Liberty Group*, 965 F.2d 879 (10th Cir. 1992), gives the controlling rule about organizational distinctness. Its holding is this: "the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Id.* at 886.

On this record, *Liberty Group*'s organizational-distinctness holding defeats Count 1. Mr. Creeden did not have to disprove a separate enterprise. The government had to prove one. But the government's own direct proof plus cross-examination eliminated any serious claim that the Jones Enterprise existed apart from the IBB. The record showed union personnel acting through union machinery, not a separate association-in-fact.

### B.      Proof showed only IBB personnel acting in that capacity.

#### 1.      All titles and authority were IBB's.

The government had the burden of proving that the "Jones Enterprise" had its own authority structure. It proved only IBB offices exercising IBB power.

The defendants acted through official IBB titles and constitutional authority. Exhibit 2B, the IBB organizational chart, showed the formal "Structure of the Headquarters Office," including Human Resources and Accounting under the International Secretary-Treasurer as part of the IBB's "system of checks and balances." Trial Tr. [Rough] May 8 at 60-62. Current International President Timothy Simmons likewise read Article 7.1.1 from Exhibit 3, confirming that the International President had authority to countersign payment orders and make expenditures necessary to protect the IBB's interests. Trial Tr. [Rough] May 6 at 156. He also confirmed that Article 5.2 gave the International Executive Council

authority to approve expenditures needed to accomplish union objectives. Trial Tr. [Rough] May 6 at 158.

Other proof made the same point. Trial Tr. [Rough] May 6 at 114-117 (annual LM-2 reporting); Trial Tr. [Rough] May 7 at 200-202 (constitutional chain of command); Trial Tr. [Rough] May 8 at 63-65 (Fairley confirming constitutional expenditure-oversight duties); Trial Tr. [Rough] May 19 at 112-113 (Investigator Newman acknowledging Article 7.1.1 authority); Ex. 4 (Article 9.1 Secretary-Treasurer duties); Ex. 264 (Article 7.1). The authority flowed from the IBB Constitution, not from a separate racketeering association.

### 2.    All approval channels were IBB's.

The government had the burden of proving approval channels unique to the "Jones Enterprise." It proved only that paperwork went where IBB paperwork was supposed to.

The alleged conduct moved through formal IBB channels. Travel began with official IBB assignment letters from the President's office. Expenses moved through accounting and HR. IEC meetings generated minutes and approvals. Internal disputes proceeded through the IBB's Article 17 disciplinary process. Stapp confirmed that direct expense reports required dual approval from the International President's office and the International Secretary-Treasurer's office. Trial Tr. [Rough] May 13 at 256-59.

Exhibit 55 confirmed the same structure. Newman admitted that the assignment letters were official documents issued from Newton Jones's office designating international travel. Trial Tr. [Rough] May 18 at 273. Stapp confirmed that the Secretary-Treasurer's office paid the corresponding travel allowance once the letter arrived. Trial Tr. [Rough]

May 14 at 81-82. Other proof showed the same thing. Trial Tr. [Rough] May 13 at 258-60 (Stapp identifying Ex. 20, the official IBB Expense Report Form); Trial Tr. [Rough] May 12 at 186-88 (Tyler Brown confirming backpay moved through formal HR and accounting channels). Standard union policy routing is not proof of a separate enterprise.

### 3.    All financial infrastructure was IBB's.

The government had the burden of proving financial infrastructure unique to the "Jones Enterprise." It proved only transactions recorded in the IBB's own systems.

The alleged conduct used IBB financial infrastructure and public accounting. Newman admitted that he found no secret bank accounts, no hidden funds, no fake invoices, and no burner phones. Trial Tr. [Rough] May 19 at 123-25, 216-17. The challenged transactions ran through IBB American Express cards, the Great Plains general ledger, Legacy Professionals audits, and public LM-2 filings.

Newman admitted that Exhibit 427, showing relocation expenses, came directly from Great Plains and that he "lifted it all out of the general ledger from the Boilermakers Union." Trial Tr. [Rough] May 18 at 223-24. He also acknowledged that years of compensation data came directly from LM-2s filed by the Boilermakers and signed by Newton Jones and William Creeden. Trial Tr. [Rough] May 18 at 197. Other proof confirmed the open-book nature of the record. Trial Tr. [Rough] May 15 at 227, 256 (Stojak confirming LM-2s are publicly available on the DOL website); Trial Tr. [Rough] May 15 at 199-201 (Bathory confirming Great Plains and Micro Force accounting software); Exs. 14a–

7

14x (sixteen years of publicly filed LM-2 reports). A public accounting trail through union systems is the opposite of proof that a separate enterprise existed.

### 4.    All business objectives were IBB's.

The government had the burden of proving objectives unique to the "Jones Enterprise." It proved recognized IBB business and called it enterprise purpose.

The alleged conduct pursued recognized IBB business and strategic objectives. The international travel involved official labor conferences, including IndustriALL and UN climate-related events. The Bank of Labor roles were authorized by the IEC through Exhibit 185, a July 2008 resolution invoking Article 4.7 for the good of the union.

Simmons confirmed that the resolution authorized Newton Jones and William Creeden to work at the Brotherhood Bank, with Jones as CEO and Creeden as Executive Vice President. Trial Tr. [Rough] May 7 at 228-29. McCall likewise testified that the Bank's labor strategy was profitable and that the IBB was the Bank's majority shareholder through its investments. Trial Tr. [Rough] May 20 at 67, 210. Other proof reinforced the institutional character of the work. Trial Tr. [Rough] May 11 at 43 (Fairley discussing IEC authorization for union loans to the Bank of Labor); Trial Tr. [Rough] May 19 at 161-62 (Newman reviewing Ex. 2986 and confirming attendance at the IndustriALL women's conference); Ex. 40 (Blake & Uhlig memorandum on expenditures); Ex. 116 (Strategic Partnership Agreement with TSSA).

### C.     The IBB conflation is fatal.

The government's proof therefore runs headlong into *Liberty Group* and its Tenth Circuit lineage. The government proved IBB leaders acting as IBB leaders, through IBB authority, using IBB systems, for asserted IBB purposes. That is the IBB acting through its personnel. It is not a distinct RICO association-in-fact.

*Board of County Commissioners of San Juan County v. Liberty Group*, 965 F.2d 879 (10th Cir. 1992), gives the rule: "the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Id.* at 886. *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212 (10th Cir. 1987), supplies the foundation: § 1962(c) requires a RICO "person" distinct from the RICO "enterprise." *Id.* at 213. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), confirms the same principle: RICO requires "two distinct entities," a "person" and an "enterprise" not merely the same person under another name. *Id.* at 161.

Later Tenth Circuit cases reinforce the point. *Brannon v. Boatmen's First National Bank of Oklahoma*, 153 F.3d 1144 (10th Cir. 1998), held that a corporation cannot establish distinctness by pointing to its own officers and employees. *Id.* at 1149. *George v. Urban Settlement Services*, 833 F.3d 1242 (10th Cir. 2016), quoted *Liberty Group* and reaffirmed that an entity acting through subsidiaries, agents, or employees typically cannot be both RICO person and enterprise. *Id.* at 1249. *Llacua v. Western Range Association*, 930 F.3d 1161 (10th Cir. 2019), held that an organization cannot join with its own members to do what it normally does and thereby form a separate enterprise. *Id.* at 1182–83.

9

That is this record. The government proved IBB titles, constitutional authority, assignment letters, expense approvals, Great Plains entries, LM-2 filings, IEC minutes, HR processing, and Bank of Labor work through union channels. That proof may support an argument that some IBB decisions were wrong, excessive, or unauthorized. It does not prove a Jones Enterprise distinct from the IBB. Count 1 fails.

## II.    No conspiracy: The hub and spokes have no rim.

### A.    Conspiracy requires a unifying "rim."

Count 1 fails because the supposed conspiracy proof showed separate spokes connected only by Newton Jones. That is not one conspiracy. It is a rimless wheel.

*Kotteakos v. United States*, 328 U.S. 750 (1946), gives the basic conspiracy rule. There, the government charged one conspiracy but proved multiple separate agreements tied to the same central broker. Id. at 752–55. The Supreme Court reversed because the defendants were "strangers, unconnected with one another except by" the central figure's connection to each. Id. at 754–55. A common hub did not create one wheel. The government still had to prove the rim.

*Tronsgard v. FBL Financial Group, Inc.*, 312 F. Supp. 3d 982 (D. Kan. 2018), applies the same logic in the RICO-enterprise setting. The Court there held that a rimless hub-and-spoke theory cannot qualify as an association-in-fact enterprise without facts showing relationships, agreements, or collaborative communications among the spokes. *Id.* at 1000–01. Parallel conduct by separate actors around a common hub does not show that the spokes associated together for a common RICO purpose. *Id.*

Those rules control here. Newton Jones may be the government's hub. But Count 1 required proof that the alleged spokes were joined by a common agreement and common enterprise purpose. It was not enough to prove that different people had separate connections to Jones. The government had to prove that Mr. Creeden agreed to the broader charged enterprise conspiracy, not merely that he had official proximity to Jones.

### B.   Proof showed no rim.

The government's leading proof did not establish the necessary rim beyond a reasonable doubt. It exposed its absence.

Newman admitted that he did not investigate the agreement element tying the defendants into one global conspiracy: "It's not anything I thought about." Trial Tr. [Rough] May 19 at 202. Fairley admitted no one ever acknowledged a criminal enterprise. Trial Tr. [Rough] May 8 at 234. Brown admitted he never sat down with Jones and agreed to a racketeering enterprise. Trial Tr. [Rough] May 13 at 16–17.

The proof went on to display the missing rim in context after context. The Bank of Labor allegations formed a separate spoke involving Newton Jones and Mr. Creeden. But that spoke did not prove an agreement by Mr. Creeden to join the family wage, health-care, vacation, office-administration, or surveillance spokes. At most, it showed Mr. Creeden's participation in Bank of Labor-related conduct the government challenges as improper.

The supposed "rim" proof therefore runs headlong into *Kotteakos* and *Tronsgard*. The government proved separate Newton Jones-centered spokes, not one connected wheel. The family benefits spoke ran through Jones, his family, and Stapp. The vacation-

payout spoke ran through Jones and Stapp. The Bank of Labor spoke involved Jones and Mr. Creeden. Those spokes had different participants, mechanics, objectives, and evidence. Official proximity to Newton Jones is not agreement to a RICO enterprise. The proof did not establish the conspiracy the grand jury charged. Rule 29 requires acquittal.

## Conclusion

The motion should be granted.

Respectfully submitted,

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tel: 713-228-5900
areynal@frlaw.us

Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tel: 316-265-5511
kurtpkerns@aol.com

/s/ Chad Flores
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tel: (713) 364-6640
chad@chadflores.law

Attorneys for William Creeden

12

## Certificate of Service

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all registered counsel of record on the day of its filing.

 /s/ Kurt Kerns
Kurt Kerns

13