# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

    *Defendants*.

Case No. 2:24-cr-20070-DDC

**Defendant William Creeden's
Reply in Support of his
Motion for a New Trial**

**Table of Contents**

I.    The exclusion of critical intent proof warrants a new trial. ..................................... 5

    A.    The excluded testimony was relevant intent evidence. ............................... 6

        1.    Mr. Elbaor's testimony went directly to intent. ................................ 6

        2.    The proffer supplied defendant-specific cooperation evidence. ......... 8

        3.    *Makkar* supplies the governing relevance principle. ........................ 10

        4.    Additional authority confirms the same rule. ................................. 12

    B.    The counterarguments do not justify exclusion. ........................................ 14

        1.    The subpoena's addressee does not control. .................................. 14

        2.    The government's competing account went to weight. .................... 17

        3.    The proffer did not depend on hearsay. ......................................... 20

        4.    The government did not preserve its Rule 403 theory. ................... 22

    C.    The exclusion prejudiced Mr. Creeden. ..................................................... 24

    D.    A new trial is required. ............................................................................. 26

II.   The Court should resolve this motion after the Rule 29 motions. ......................... 28

Conclusion ............................................................................................................... 29

**Reply**

The exclusion of Mr. Elbaor's testimony deprived the jury of important evidence bearing directly on Mr. Creeden's intent. Mr. Elbaor would have described Mr. Creeden's personal response when federal scrutiny reached the same records, transactions, expense practices, travel, reporting, and Bank of Labor matters later charged as crimes. Because intent was the central dispute and no other witness could supply that account, the exclusion requires a new trial. Doc. 486 at 3–13.

The government deems the testimony irrelevant because Mr. Creeden acted in an official capacity under a subpoena; it also asserts that he declined a requested witness interview and participated in a production the government considered incomplete. It alternatively invokes hearsay and Rule 403 and denies prejudice. Doc. 501 at 2–7. Those counters fail because Rule 401 permits the innocent-intent inference, the proffer did not depend on hearsay, Rule 403 was neither preserved nor satisfied, and the exclusion caused substantial prejudice.

First, the government's arguments concern weight, not Rule 401's threshold. Mr. Creeden helped gather records, worked with counsel, helped prepare and bring prosecutors a flowchart explaining the reimbursement-approval process, attended meetings with prosecutors, answered substantive questions, and never refused to answer. That conduct had at least some tendency to make innocent intent more probable. So it was relevant, and the government's answers went to weight—not admissibility.

Second, *United States v. Makkar*, 810 F.3d 1139, 1147–48 (10th Cir. 2015), supplies the governing Rule 401 principle. The government's two proposed distinctions miss *Makkar*'s separate evidentiary holding. The absence of an instructional error here does not change Rule 401. Nor does it matter that *Makkar* involved knowledge about a product's chemical composition rather than knowledge about union transactions. The relevant state of mind changes with the offense. The evidentiary principle does not.

Third, the capacity and compulsion arguments prove too little. The subpoena may have required the IBB to produce responsive records. It did not require Mr. Creeden to stay late, work continuously with counsel, attend multiple prosecutor meetings, answer substantive questions when counsel could not, or answer every question put to him. The government itself asserts that Mr. Creeden declined a requested witness interview. Even accepting that assertion at face value—which was never proven but only asserted—it may weaken the defense inference, but it cannot make the rest of his conduct irrelevant.

Fourth, the government's hearsay argument attacks evidence the defense did not need to offer. The proffer expressly avoided eliciting Mr. Creeden's statements for their truth. 16 Trial Tr. 3831. It established that he attended the meetings, willingly answered questions about the charged subject matter, supplied information when counsel could not, and never refused to respond. Those firsthand observations were not hearsay.

Fifth, Rule 403 does not sustain the trial ruling on this record. The government did not invoke Rule 403, the Court made no Rule 403 finding, and the defense therefore had no occasion to address narrower means of handling the asserted danger. The theory also

4

fails on its merits because cross-examination and rebuttal could supply the government's preferred context without removing the evidence from the jury.

Finally, the exclusion caused substantial prejudice. Intent was the battleground, and the government relied on inference. Mr. Elbaor was the only witness who could describe Mr. Creeden's response during the document production and prosecutor meetings. No other evidence filled that gap, and counsel's argument could not substitute for proof. The exclusion leaves grave doubt about the verdict.

## I.     The exclusion of critical intent proof warrants a new trial.

The Court excluded the only witness who could describe how Mr. Creeden responded when federal scrutiny reached the conduct later charged as criminal. Mr. Elbaor would have testified that Mr. Creeden helped gather and produce records, helped prepare and bring prosecutors a flowchart explaining the reimbursement-approval process, attended meetings with prosecutors, answered substantive questions about the challenged transactions, and never refused to explain his conduct. That evidence bore directly on criminal intent, and its exclusion warrants a new trial. Doc. 486 at 5–13.

The government counters that the testimony reflected only compulsory institutional compliance, not voluntary personal cooperation, and therefore said nothing about Mr. Creeden's state of mind. It also raises hearsay and Rule 403 as alternative grounds and denies prejudice. Doc. 501 at 2–7. Those counters fail because the cooperation evidence was relevant, the hearsay theory attacks testimony not offered for its truth, Rule 403 was not preserved, and the missing evidence mattered.

### A.    The excluded testimony was relevant intent evidence.

Rule 401 required admission because Mr. Elbaor′s testimony made corrupt intent less probable. The proffer showed how Mr. Creeden acted when prosecutors examined the same approval practices, expenses, travel, reporting, and Bank of Labor matters later charged as crimes. That conduct cleared Rule 401′s low threshold and belonged before the jury. Doc. 486 at 5–9.

The government counters that Mr. Creeden′s assistance did not show whether he believed particular expenditures were authorized or whether he possessed knowledge, willfulness, or fraudulent intent. It further argues that compulsory subpoena compliance cannot indicate innocent intent. Doc. 501 at 3–6. Those counters fail because Rule 401 requires only a rational tendency, compulsory production did not account for Mr. Creeden′s broader participation, and competing explanations went to weight.

### 1.    Mr. Elbaor′s testimony went directly to intent.

Mr. Elbaor personally observed Mr. Creeden′s response when federal scrutiny reached the matters later charged. He would have testified that Mr. Creeden gathered records, worked continuously with counsel, helped prepare a flowchart explaining the reimbursement process for prosecutors, attended meetings with prosecutors, answered substantive questions, and never refused to respond. That firsthand account bore directly on whether Mr. Creeden acted with criminal intent. Doc. 486 at 5–6.

6

The government counters that the testimony did not establish Mr. Creeden's knowledge, willfulness, or fraudulent intent. It argues that assisting with records did not show whether he believed particular expenses were authorized. Doc. 501 at 4, 6. Those counters fail because Rule 401 requires only a rational tendency, circumstantial conduct may prove intent, and the proffer connected Mr. Creeden's conduct to the charged matters.

Rule 401 asks only whether evidence has any tendency to make a consequential fact more or less probable. Fed. R. Evid. 401. That threshold is low, and Mr. Creeden's intent was consequential because the government charged intentional crimes. *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998).

The proffer cleared that threshold. The IBB retained Mr. Elbaor to address federal scrutiny, including the April 2022 grand-jury subpoena. 16 Trial Tr. 3814–17. He worked directly with Mr. Creeden to identify records and prepare the union's response. 16 Trial Tr. 3817–18.

Mr. Elbaor found Mr. Creeden "more than responsive." 16 Trial Tr. 3818. Mr. Creeden stayed late and helped gather and produce thousands of pages. He did more than produce records. He, Mr. Elbaor, and Stapp prepared a flowchart showing how the union's reimbursement process worked, brought it to the government meeting, and Mr. Creeden answered questions about the flowchart, reporting, and expense approvals. 16 Trial Tr. 3837–38. Counsel also asked Mr. Creeden to attend meetings at the U.S. Attorney's Office because counsel needed his help explaining the records. 16 Trial Tr. 3818–24. The meetings addressed accounting, reporting, expense approvals, European travel, officer expenses,

Bank of Labor matters, and union operations. 16 Trial Tr. 3837–40. When Mr. Elbaor could not answer, Mr. Creeden did. Asked whether Mr. Creeden ever refused a question, Mr. Elbaor answered: "No. He was totally cooperative." 16 Trial Tr. 3824, 3840.

That conduct made corrupt intent less probable. A person who believes records reveal intentional crimes has reason to hide or avoid them. A person who believes they reflect legitimate administration has reason to collect and explain them. The inference need not be conclusive. Its rational tendency made the evidence relevant.

### 2.    The proffer supplied defendant-specific cooperation evidence.

The proffer established more than routine institutional document handling. It showed that Mr. Creeden personally worked with counsel, helped prepare explanatory material for prosecutors, attended multiple prosecutor meetings, answered substantive questions about charged subject matter, supplied information when counsel could not, and never refused to respond. That defendant-specific account permitted an inference of innocent intent and was available from no other witness. Doc. 486 at 6–8.

The government counters that Mr. Creeden attended only as the IBB′s custodian of records and that the production was an institutional response to a subpoena. It also argues that he was not appearing as a witness, subject, or target. Doc. 501 at 2–4. Those counters fail because the proffer concerned Mr. Creeden′s personal conduct, the meetings addressed charged subject matter, and no other witness could supply the same account.

### (i)     The proffer concerned Mr. Creeden's personal conduct.

The proffer focused on Mr. Creeden's personal conduct, not merely the IBB's production. The defense offered evidence about what Mr. Creeden did when prosecutors examined conduct for which the government later prosecuted him.

Mr. Creeden reviewed records with counsel. He stayed late. He worked continuously. He helped locate and produce thousands of pages. He helped prepare and bring prosecutors a flowchart showing how reimbursement approvals worked, and he answered questions about it. 16 Trial Tr. 3837–38. He attended prosecutor meetings at counsel's request. He answered questions when counsel could not. He never refused to answer. 16 Trial Tr. 3817–24, 3837–40.

Those details distinguished Mr. Creeden's conduct from the bare fact of an institutional production. An organization's production might say little about the mental state of any one officer. Mr. Creeden's personal response said more.

### (ii)     The meetings addressed the charged subject matter.

The evidence connected Mr. Creeden's response to the prosecution. The questions concerned accounting, reporting, expense approval, officer expenses, European travel, Bank of Labor matters, and union operations. 16 Trial Tr. 3837–40. These were central subjects in the government's case.

### (iii)    The evidence was unique.

No other witness supplied the same firsthand account. Mr. Elbaor personally observed the document response and prosecutor meetings. Mr. Creeden did not testify.

The government never identifies cumulative evidence. Nor does it explain why testimony from the lawyer who personally observed Mr. Creeden's response would have added nothing. The testimony was defendant-specific, unique, and probative.

### 3.    *Makkar* supplies the governing relevance principle.

*Makkar* establishes the governing Rule 401 principle. The Tenth Circuit held that defendants' efforts to engage law enforcement and test the legality of their conduct were relevant because those actions made guilty knowledge less probable. Mr. Creeden's decision to gather records, prepare explanatory material for prosecutors, meet with prosecutors, and answer questions supported the same inference. Doc. 486 at 8–9.

The government counters that *Makkar* is distinguishable because that case involved an instructional error and because the excluded evidence directly concerned knowledge about the chemical structure of the defendants' product. It asserts that Mr. Elbaor's testimony did not similarly address an element of Mr. Creeden's offenses. Doc. 501 at 5–6. Those counters fail because *Makkar*'s evidentiary holding was independent of its instructional ruling, factual differences do not alter Rule 401, and the government's distinctions concern weight.

### (i) *Makkar* separately held the cooperation evidence relevant.

The government's first distinction conflates separate rulings. *Makkar* addressed an instructional error and then separately addressed the exclusion of cooperation evidence. 810 F.3d at 1147–48. The evidentiary holding did not depend on the instructional error.

Mr. Creeden invokes *Makkar* for its evidentiary holding, not to challenge the instructions. The Tenth Circuit held that cooperative conduct toward law enforcement may bear directly on mens rea. Correct instructions do not render relevant evidence inadmissible. They make it more important that the jury receive the evidence needed to apply them.

### (ii) The factual differences do not alter the governing rule.

The government's second distinction reduces precedent to factual identity. The state-of-mind question in *Makkar* concerned what the defendants knew about the substance they sold. The state-of-mind question here concerned what Mr. Creeden believed about union records and transactions. The facts differ because the offenses differ.

The Rule 401 principle remains the same. In *Makkar*, the defendants' decision to seek testing and offer to suspend sales permitted an inference that they did not believe their conduct was illegal. Here, Mr. Creeden's decision to expose records to scrutiny, help explain the reimbursement process, attend meetings, and answer questions permitted an inference that he did not believe the records revealed intentional crimes.

11

### (iii)    The government's distinctions concern weight.

Neither course of conduct expressly declared the defendant's mental state. Both supported an inference about it. The government may argue that the inference was weaker here, but that argument goes to weight.

The government's position would leave *Makkar* with no application outside another prosecution involving the same product, the same investigation, and the same mens rea element. Evidentiary holdings do not operate that narrowly. *Makkar* establishes the relevant evidentiary principle: conduct toward investigators is admissible when it rationally bears on the defendant's state of mind. The factual differences affect the strength of the inference, not Rule 401's threshold.

### 4.    Additional authority confirms the same rule.

The same evidentiary logic appears from both directions. *United States v. Davis*, 437 F.3d 989, 995-96 (10th Cir. 2006), recognizes false exculpatory conduct as circumstantial evidence of consciousness of guilt. *United States v. Biaggi*, 909 F.2d 662, 690-91 (2d Cir. 1990), recognizes conduct as circumstantial evidence of a state of mind devoid of guilty knowledge. Competing explanations affect weight, not relevance. Doc. 486 at 9.

The government counters that *Biaggi* involved the rejection of immunity and that *Davis* involved false exculpatory statements admitted as evidence of guilt. It treats those factual differences as reasons the cases have no application here. Doc. 501 at 6. Those counters fail because *Biaggi* states a general state-of-mind principle, *Davis* illustrates the

same evidentiary logic from the opposite direction, and factual differences do not erase relevance.

### (i)    *Biaggi* recognizes the general state-of-mind principle.

*Biaggi* recognized that conduct may provide circumstantial evidence of a state of mind devoid of guilty knowledge. 909 F.2d at 690–91. The rejection of immunity was the conduct at issue in that case. It was not a limit on the governing principle.

The particular conduct differs here because the investigation differed. Mr. Creeden helped gather records, helped prepare an explanatory flowchart for prosecutors, attended prosecutor meetings, answered substantive questions, and never refused to respond. That conduct supported an innocent-intent inference just as the conduct in *Biaggi* did.

The government says Mr. Elbaor did not testify that Mr. Creeden expressly denied knowledge of wrongdoing. Doc. 501 at 6. But circumstantial evidence does not require an express declaration of mental state. The conduct itself supplies the inference.

### (ii)    *Davis* illustrates the same evidentiary logic from the opposite direction.

*Davis* confirms the same point from the opposite direction. The government may introduce false exculpatory statements as circumstantial evidence of consciousness of guilt. 437 F.3d at 995–96. The jury then decides what inference the conduct supports.

The inverse relationship is the point. If false or evasive conduct toward investigators may support guilty intent, open and cooperative conduct may support innocent intent. The relevance principle cannot operate only when the inference favors the prosecution.

### (iii)   The government cannot make the rule prosecution-only.

The government could challenge the strength of the inference. It could not declare the entire category relevant only when it favors the prosecution.

### B.   The counterarguments do not justify exclusion.

The objections raised at trial concerned the capacity in which Mr. Creeden acted, the degree to which his cooperation was voluntary, and the completeness of the IBB′s production. Each supplied a competing interpretation of admitted conduct and a basis for cross-examination and argument. None answered Rule 401 or justified removing the evidence from the jury. Doc. 486 at 9–11.

The government counters that the subpoena compelled compliance, Mr. Creeden attended only to assist counsel, he declined a requested witness interview, and later counsel produced substantially more material. It adds that any substantive answers would have been hearsay and that Rule 403 justified exclusion. Doc. 501 at 2–4. Those counters fail because capacity, compulsion, interview format, and production completeness concern weight; the proffer did not depend on hearsay; and Rule 403 was neither preserved nor satisfied.

The government′s factual account belonged before the jury. It could present the circumstances it believed weakened the inference, while the defense presented Mr. Creeden′s conduct. The jury could then determine what the evidence showed.

The hearsay theory does not reach the evidence actually proffered. The Rule 403 theory was not preserved and does not satisfy Rule 403 in any event.

### 1.   The subpoena′s addressee does not control.

14

The fact that the subpoena ran to the IBB did not erase the relevance of Mr. Creeden′s conduct. The consequential fact was his state of mind, not the name in the subpoena′s caption. Mr. Creeden personally gathered records, helped prepare a flowchart explaining the reimbursement process, attended prosecutor meetings, and answered questions about the same official conduct later charged as criminal. Doc. 486 at 9–10.

The government counters that Mr. Creeden attended solely as the IBB′s Secretary-Treasurer and custodian of records, not as a fact witness, subject, or target. It further argues that his actions were legally compelled because an organizational custodian must produce subpoenaed records. Doc. 501 at 2–4. Those counters fail because official capacity did not erase Mr. Creeden′s individual state of mind, compulsory production did not account for the manner of his participation, and formal target status was unnecessary.

### (i)    Official capacity did not erase individual state of mind.

Mr. Creeden′s participation was relevant in its own right. He personally attended meetings with the prosecutors handling the inquiry. He did not remain behind the institutional form or leave the response entirely to counsel.

The government itself treats Mr. Creeden′s response choices as significant: it relies on his asserted refusal of a separate witness interview. It cannot treat that choice as probative while declaring his other response choices categorically irrelevant.

### (ii)    The manner of participation exceeded compulsory production.

15

The manner of Mr. Creeden's participation supplied additional relevance. Even where an institution must comply with a subpoena, substantial discretion remains in how its officers respond. Mr. Creeden did not merely authorize mechanical delivery of records. He worked with counsel, helped explain the records, helped prepare and bring prosecutors a reimbursement-process flowchart, attended multiple meetings, answered substantive questions, and refused no question. 16 Trial Tr. 3818–24, 3837–40.

The government itself treats the manner of participation as significant. It emphasizes that Mr. Creeden "declined to voluntarily cooperate and sit for a witness interview." Doc. 501 at 4. That argument presupposes that choices about how a person responds to investigators may bear on intent.

The government cannot invoke one such choice while declaring all the others irrelevant. The government's asserted interview refusal may weaken the defense inference. It cannot erase Mr. Creeden's participation in the meetings he did attend.

### (iii)    Target status and the compulsory-records doctrine do not change the result.

Formal target status did not control. The investigation concerned alleged Section 501(c) violations, union spending, officer conduct, reporting, and Bank of Labor matters. Mr. Creeden held one of the IBB's highest offices while the inquiry examined union spending, reporting, officer conduct, and Bank of Labor matters. A jury could infer that he understood the inquiry could reach him personally. 16 Trial Tr. 3829–30.

16

*Makkar* did not condition relevance on formal target status; the cooperation there likewise preceded indictment. 810 F.3d at 1141–42, 1147–48. The Tenth Circuit examined what the defendants did when scrutiny reached their conduct, not whether prosecutors had formally labeled them targets.

The compulsory-records doctrine also proves too little. *United States v. White*, 322 U.S. 694, 699–704 (1944), establishes that an organizational custodian cannot invoke a personal Fifth Amendment privilege to withhold organizational records. It establishes a production obligation, not a categorical rule of evidentiary irrelevance.

*Curcio v. United States*, 354 U.S. 118, 123–28 (1957), sharpens the distinction. A custodian could be compelled to produce union records, but he could not be compelled, absent adequate protection, to give incriminating oral testimony about them. Id. The government therefore overstates the law when it treats production and oral participation as equally compulsory.

The subpoena may have required the IBB to produce responsive records. It did not require Mr. Creeden to stay late, work continuously with counsel, attend multiple prosecutor meetings, answer substantive questions when counsel could not, or answer every question put to him. Compulsion set a floor. It did not account for the full response.

### 2.    The government's competing account went to weight.

The government's objections supplied a competing narrative for the jury. It could argue that Mr. Creeden's cooperation was limited, compelled, self-interested, or

incomplete and could cross-examine Mr. Elbaor on those subjects. A factual dispute about the quality or extent of cooperation affected weight, not admissibility. Doc. 486 at 11.

The government counters that Mr. Creeden attended attorney-proffer sessions rather than a witness interview, refused the requested interview, and participated in an inadequate production that expanded only after new counsel arrived. It treats those assertions as reasons the jury could not consider Mr. Elbaor's account at all. Doc. 501 at 2–4. Those counters fail because the attorney-proffer setting, declined interview, and later production supplied grounds for cross-examination, not categorical exclusion.

### (i) The attorney-proffer setting and the asserted interview refusal went to weight.

Mr. Elbaor asked Mr. Creeden to attend because counsel needed help explaining the documents. 16 Trial Tr. 3819–20. Prosecutors asked questions, and Mr. Creeden answered when counsel could not. 16 Trial Tr. 3824. The government could emphasize that these were attorney proffers and that it separately requested an interview that Mr. Creeden declined. The defense could emphasize what Mr. Creeden nevertheless did in the meetings he attended. That factual dispute went to weight.

### (ii) The production history was not tied to Mr. Creeden.

The production history presented another factual dispute. The government says the IBB initially produced roughly 6,000 pages, later counsel produced substantially more, and the government sought to compel compliance. Doc. 501 at 2–3.

18

The government′s response does not identify evidence that the asserted production shortfall resulted from a direction by Mr. Creeden to withhold responsive material.

More fundamentally, Mr. Elbaor′s testimony did not depend on proving perfect institutional compliance. It described what he personally observed Mr. Creeden do. A later production might weaken the inference from those actions. It could not erase the actions.

### (iii)    Cross-examination was the proper remedy.

Cross-examination could test every government point. The government could ask about the subpoena, its asserted interview request and refusal, the attorney-proffer setting, the number of documents produced, and the later production. It could then urge the jury to give the cooperation little weight.

What the government could not do was convert its preferred inference into an admissibility rule.

### 3.    The proffer did not depend on hearsay.

The relevance argument rested on Mr. Elbaor's firsthand observations of Mr. Creeden's conduct. The relevant evidence was that Mr. Creeden attended the meetings, willingly answered questions about charged subject matter, supplied information when counsel could not, and never refused to respond. The defense did not need to prove that any substantive answer was true. Doc. 486 at 5–11.

The government counters that any probative statement Mr. Creeden made during the meetings would have been hearsay and therefore could not have reached the jury through Mr. Elbaor. It treats that premise as an alternative justification for excluding the entire account. Doc. 501 at 4. Those counters fail because the proffer expressly avoided substantive answers, Mr. Elbaor's observations were not offered for their truth, and any statement-specific concern could have been addressed narrowly.

### (i)    The proffer avoided substantive hearsay.

The proffer expressly avoided relying on Mr. Creeden′s statements for their truth. When the Court asked about the substance of the meetings, counsel explained that he had not elicited the conversation′s substance because he anticipated a hearsay objection. 16 Trial Tr. 3831.

The completed proffer instead established the relevant subjects and the manner of Mr. Creeden′s participation. Mr. Elbaor identified questions about the accounting system, reporting, disclosure, expense approvals, officer expenses, European travel, the Bank of Labor, and union operations. 16 Trial Tr. 3837–40.

### (ii)    Mr. Elbaor′s firsthand observations were not hearsay.

Mr. Elbaor testified that Mr. Creeden answered questions, willingly participated, supplied answers when counsel could not, and never refused to respond. 16 Trial Tr. 3824, 3837–40. Those were firsthand observations.

The defense did not offer the evidence to prove the truth of any out-of-court assertion. Fed. R. Evid. 801(c)(2). It offered the evidence to show what Mr. Creeden did when confronted with federal scrutiny and whether he turned toward or away from the inquiry.

Mr. Elbaor′s testimony that Mr. Creeden attended a meeting was not hearsay. His testimony that Mr. Creeden answered questions was not hearsay. His testimony that Mr. Creeden never refused to answer was not hearsay. The subjects discussed supplied context

connecting that conduct to the matters later charged; they did not require the jury to accept any substantive answer as true.

### (iii)   Any statement-specific concern called for a narrow limit.

The government's argument assumes that a possible limit on some conversational detail required exclusion of every observation about the meetings. It did not. Even if a particular answer implicated hearsay, the Court could limit the testimony to the fact of the response, the subject addressed, and the manner of participation.

A possible restriction on individual statements did not justify categorical exclusion of the entire line of evidence.

### 4.   The government did not preserve its Rule 403 theory.

The motion addressed the ground on which the testimony was excluded: relevance. The Court found that the evidence did not satisfy Rule 401 and excluded it on that basis. The motion showed that this relevance ruling was erroneous and that the government's competing factual account concerned weight. Doc. 486 at 5–13.

The government now counters that any limited probative value was substantially outweighed by a danger that the jury would mistakenly view Mr. Creeden's participation as voluntary. It invokes Rule 403 as an alternative ground for exclusion. Doc. 501 at 4. That counter fails because the government never invoked Rule 403, the Court never performed the required balancing, and ordinary trial tools could address the claimed risk.

#### (i) The government did not invoke Rule 403.

The government did not raise Rule 403 during the proffer. The dispute centered on relevance, capacity, compulsion, the government's asserted interview request and refusal, and the document production. 16 Trial Tr. 3828–34.

The Court likewise did not conduct Rule 403 balancing. It said, "I can't find a bit of relevance in that," and concluded that the evidence did not meet Rule 401's "relatively forgiving standard." 16 Trial Tr. 3829. After the completed proffer, the Court remained unpersuaded on relevance. 16 Trial Tr. 3841–42.

#### (ii) Rule 403 does not independently sustain the exclusion on this record.

The government did not invoke Rule 403, the Court did not perform the balancing, and the defense had no occasion to develop narrower responses to the asserted danger.

That omission matters because Rule 403 requires context-specific balancing of the evidence's probative force, the identified danger, and available means short of exclusion. Here, cross-examination, narrowed testimony, or an appropriate instruction could address the claimed risk.

#### (iii) Rule 403 favored admission in any event.

The theory also fails on the merits. Rule 403 permits exclusion only when probative value is substantially outweighed by a listed danger. The government cannot establish that imbalance.

23

The evidence carried substantial probative value. Intent was central. Mr. Elbaor supplied unique firsthand evidence about Mr. Creeden's response when prosecutors examined the conduct later charged. No other witness could offer it.

The supposed danger was readily manageable. The government could tell the jury that the subpoena was compulsory, that Mr. Creeden acted as an IBB officer, that the meetings were attorney proffers, that the government requested and Mr. Creeden declined a requested witness interview, and that later counsel produced additional records.

Cross-examination and rebuttal would not mislead the jury. They would inform it. The defense would present the conduct, the government would present its explanation, and the jury would decide what the evidence showed.

The government's Rule 403 theory repeats its relevance error in another form. It assumes that because the government disputes the defense inference, the jury cannot safely hear the underlying facts. Rule 403 does not authorize exclusion merely because relevant defense evidence might persuade the jury.

### C.     The exclusion prejudiced Mr. Creeden.

The exclusion removed unique evidence from a trial in which intent was the central dispute and the government's case depended heavily on inference. Mr. Elbaor alone could describe Mr. Creeden's conduct during the prosecutor meetings and document response. No other witness supplied that account, Mr. Creeden did not testify, and argument could not substitute for proof. Doc. 486 at 11–13.

24

The government counters that the exclusion caused no prejudice because the evidence was irrelevant and because the jury was correctly instructed on the applicable mental states. It does not identify cumulative evidence or another witness who supplied the excluded account. Doc. 501 at 3, 6–7. Those counters fail because intent was central, the excluded evidence was unique rather than cumulative, and the government does not establish harmlessness.

### (i)　Intent was central.

The government bears the burden to establish harmlessness once evidentiary error is shown. An error is not harmless if it substantially influenced the outcome or leaves the Court in grave doubt. *United States v. Chavez*, 976 F.3d 1178, 1201–02 (10th Cir. 2020).

The response offers no separate harmlessness analysis. It relies on its relevance argument and the correctness of the jury instructions. Neither addresses the effect of withholding unique defense evidence bearing on the very mental states the jury was instructed to decide. Doc. 501 at 3, 6–7.

Intent was the battleground. The government charged crimes requiring knowledge, willfulness, or fraudulent intent. Its response emphasizes that the Court instructed the jury on those mental states. Doc. 501 at 6. Correct instructions did not eliminate prejudice. They required the jury to decide intent while the Court withheld important evidence bearing on that decision.

The government's case required the jury to infer criminal intent from circumstantial evidence. Mr. Elbaor's testimony supplied a concrete counterweight to that inference.

### (ii)   The excluded evidence was unique and noncumulative.

The missing facts were concrete. Mr. Creeden stayed late. He worked continuously. He helped gather and produce records. He attended prosecutor meetings. He answered substantive questions when counsel could not. He never refused to answer. 16 Trial Tr. 3818–24, 3837–40.

No other witness supplied the same firsthand account. Mr. Creeden did not testify. Counsel′s argument could not substitute for evidence.

*Makkar* confirms prejudice. There, the government argued that other mens rea evidence rendered the excluded cooperation evidence cumulative. The Tenth Circuit rejected that position because the defendants′ decision to turn to law enforcement carried extraordinary force on innocent intent. 810 F.3d at 1147–48.

The same feature is present here. Mr. Creeden sought to show what he did when federal scrutiny reached the records and transactions later used to convict him. That evidence was neither generic nor cumulative.

### (iii)   The exclusion leaves grave doubt.

The question is whether the exclusion substantially influenced the outcome or leaves grave doubt. Given the evidence′s uniqueness and its direct bearing on intent, it does.

### D.   A new trial is required.

Rule 33 requires a new trial because the excluded evidence satisfied Rule 401, addressed the central issue of intent, came from the only witness positioned to offer it, and

26

gave the defense a concrete answer to the government′s inferential theory of guilt. No valid evidentiary ground justified keeping that evidence from the jury. Doc. 486 at 13.

The government counters that new-trial motions are disfavored, the testimony was properly excluded, and Mr. Creeden has not established manifest injustice. It therefore asks the Court to preserve the verdict. Doc. 501 at 1, 3, 7. Those counters fail because Rule 401 required admission, no alternative evidentiary ground sustains exclusion, and the error substantially prejudiced the defense.

### (i)    The exclusion was error.

Rule 33 authorizes a new trial when the interest of justice so requires. Fed. R. Crim. P. 33(a). Mr. Creeden has established evidentiary error and substantial prejudice.

Rule 401 required admission. *Makkar* supplies the governing relevance principle. The government′s capacity, compulsion, interview, and production arguments went to weight.

### (ii)    No alternative ground sustains the ruling.

The hearsay theory did not reach the conduct evidence actually proffered. The Rule 403 theory was not preserved and fails on its merits.

The government′s reliance on the supposedly disfavored nature of new-trial motions changes nothing. Its own authority states that an error sufficient to require reversal also supports relief under Rule 33. *United States v. Fritzel*, No. 5:18-CR-40058-HLT, 2019 WL 4670204, at *1 (D. Kan. Sept. 25, 2019).

27

### (iii)    The error requires a new trial.

Mr. Creeden does not ask the Court to substitute its preferred verdict for the jury's. He asks the Court to remedy the exclusion of important defense evidence from the jury's consideration. The jury should have heard what Mr. Elbaor observed and decided what it meant. It did not. The Court should grant a new trial.

## II.    The Court should resolve this motion after the Rule 29 motions.

Mr. Creeden's Rule 29 motions constitute his primary request for relief. The Court should resolve them first because Rule 29(d)(1) makes the acquittal ruling logically antecedent: if the Court enters a post-verdict judgment of acquittal, it must also conditionally determine the new-trial motion. If the Court grants acquittal on any count, it should grant a new trial conditionally as to that count; otherwise, it should grant a new trial unconditionally. Doc. 486 at 13–14.

The government does not address the requested sequencing or the operation of Rule 29(d)(1). Its silence leaves the motion's sequencing analysis unanswered.

The Court therefore should resolve the Rule 29 motions first. If the Court grants a judgment of acquittal on one or more counts, it should grant this motion conditionally as to those counts. If it denies Rule 29 relief, it should grant the motion for a new trial unconditionally.

## Conclusion

The motion for a new trial should be granted.

Respectfully submitted,

Federico Andino Reynal
The Reynal Law Firm, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tel: 713-228-5900
areynal@frlaw.us

Kurt P. Kerns # 15028
Kerns Law Group
328 N. Main Street Wichita, KS 67202
Tel: 316-265-5511
kurtpkerns@aol.com

/s/ Chad Flores
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tel: (713) 364-6640
chad@chadflores.law

Attorneys for William Creeden

29

## Certificate of Service

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all registered counsel of record on the day of its filing.

 /s/ Kurt Kerns
Kurt Kerns